Exhibit A:
Proposed Complaint

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SUSQUEHANNA SECURITIES LLC and SUSQUEHANNA INVESTMENT GROUP,<br><br>Plaintiffs,<br><br>-and-<br><br>CITADEL SECURITIES LLC,<br><br>Plaintiff-Intervenor,<br><br>- against -<br><br>JOHN DOES 1 THROUGH 100,<br><br>Defendants. | Case No. 26 Civ. 5474<br><br>**[PROPOSED] COMPLAINT OF [PROPOSED] PLAINTIFF-INTERVENOR CITADEL SECURITIES LLC**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Citadel Securities LLC ("Citadel Securities") brings this Complaint against presently unknown defendants John Does 1 through 100 (the "Defendants"), based on knowledge as to Citadel Securities' own acts and upon information and belief as to all other allegations:

**INTRODUCTION**

1.      Citadel Securities, acting in its capacity as a market maker, is the victim of a brazen insider trading scheme in which Defendants—securities traders whose identities are presently unknown—fraudulently profited from their possession of material non-public information ("MNPI") regarding an impending announcement from the China Securities Regulatory Commission ("CSRC") that Defendants knew would cause a significant decline in the stock price of Futu Holdings Limited ("FUTU") and UP Fintech Holding Ltd ("TIGR").  On May 22, 2026, the CSRC announced that it would pursue enforcement actions and substantial

financial penalties against trading firms like FUTU and TIGR that had allegedly solicited securities trading business in mainland China in violation of Chinese law (the "CSRC Announcement").  Mere days before the CSRC Announcement, Defendants purchased short-dated put options on FUTU and TIGR stock, which gave them a right to sell those stocks at a predetermined price within a short time frame.  The sale price for FUTU and TIGR shares guaranteed by these options was much lower than the stock price of FUTU and TIGR at the time the put options were purchased, but ultimately much higher than those stock prices following the CSRC Announcement.  In other words, Defendants used their inside knowledge to place a bet that FUTU's and TIGR's stock prices would severely decline in a short window, and when the stock prices did in fact precipitously decline following the CSRC Announcement, Defendants made enormous profits at the expense of Citadel Securities and other market participants.

2.    Citadel Securities was the counterparty to thousands of put options transactions that Defendants purchased.  Unlike Defendants, Citadel Securities, acting in its role as a market maker, had no knowledge of the impending CSRC Announcement.  Accordingly, Defendants fraudulently purchased put options from Citadel Securities at a price that did not factor in Defendants' insider knowledge.  After the price of FUTU and TIGR stock dropped substantially following the CSRC Announcement, Defendants' put options became hugely profitable, giving Defendants ill-gotten gains of at least $137 million in the aggregate.

3.    Defendants' scheme caused substantial losses to Citadel Securities. Defendants were able to purchase put options on FUTU and TIGR from Citadel Securities at a very low price because the options were significantly out-of-the-money (*i.e.*, the strike price for the put options was well below the then stock price of FUTU and TIGR) and they were short-dated (*i.e.*, their expiry was imminent and there was a low likelihood that the stock price of

FUTU and TIGR would decline below the strike price during the period in which the options were exercisable).  Citadel Securities sold the put options to Defendants at a market price that was informed exclusively by publicly available information and its role as a liquidity provider to the market.  The publicly available information indicated a remote likelihood that the FUTU and TIGR put options would become exercisable, *i.e.*, it was highly improbable the share price of each stock would drop so suddenly and steeply.  By virtue of their access to MNPI, Defendants, however, knew otherwise, and their cheaply-bought put options became hugely profitable following the CSRC Announcement.  As the counterparty for the put options, Citadel Securities was greatly exposed to the other side of Defendants' illicit trades.  As a result, Citadel Securities suffered approximately $28 million in losses.

4.    Citadel Securities seeks relief under Section 20A of the Securities Exchange Act of 1934 ("Exchange Act"), which provides a private remedy for litigants—such as Citadel Securities—that traded contemporaneously with a defendant who was engaged in insider trading.  Citadel Securities also states a claim for unjust enrichment under New York law because Defendants profited from their insider trading scheme at Citadel Securities' expense.

## THE PARTIES

5.    Plaintiff Citadel Securities LLC ("Citadel Securities") is a registered broker-dealer and market maker.  It is a limited liability company incorporated under Delaware law that maintains its principal place of business in Miami, Florida.  Citadel Securities also maintains an office in New York.

6.    Defendants John Does 1 through 100 are presently unidentified parties who participated in the alleged insider trading scheme.  The legal identities of John Does 1 through 100 are unknown by Citadel Securities, which therefore sues Defendants under fictitious

3

names.  Citadel Securities will amend this Complaint to state the true legal names of the

Defendants upon obtaining such information in discovery.

## OTHER RELEVANT ENTITIES

7.      Futu Holdings Limited ("FUTU") is a Cayman Islands corporation

headquartered in Hong Kong.  FUTU is a brokerage firm that provides services to, among others,

investors in Asia.  Its stock is listed on the Nasdaq Stock Exchange in New York, New York, and

trades under the ticker FUTU.  FUTU stock options trade on the NASDAQ Options Market,

based in New York, New York, among other U.S. exchanges.  One of FUTU's subsidiaries is

Futu Clearing Inc. ("Futu Clearing"), which is a Delaware corporation headquartered in Texas

that is a registered broker-dealer and facilitates trading in securities, including options.

8.      UP Fintech Holding Ltd ("TIGR") is a Cayman Islands corporation

headquartered in Singapore.  TIGR is a brokerage firm that provides services to, among others,

investors in Asia.  Its stock is listed on the Nasdaq Stock Exchange in New York, New York, and

trades under the ticker TIGR.  One of TIGR's subsidiaries is TradeUP Securities, Inc.

("TradeUP"), a New Jersey corporation headquartered in New York, New York, that operates an

electronic trading platform and facilitates trading in securities, including options.  TIGR stock

options trade on the NASDAQ Options Market, based in New York, New York, among other

U.S. exchanges.

9.      Interactive Brokers Group, Inc. ("Interactive Brokers") is a Delaware

corporation headquartered in Greenwich, Connecticut.  Interactive Brokers is a registered

electronic brokerage that facilitates trading in securities, including options.

## JURISDICTION AND VENUE

10.      This Court has federal question jurisdiction over the Section 20A insider

trading claim under 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C.

§ 78aa.  This Court has subject matter jurisdiction over the New York unjust enrichment claim under 28 U.S.C. § 1367(a).

11.     Venue in this District is proper pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b) because certain acts and/or transactions constituting the violation occurred in this District, including but not limited to (a) the Defendants purchased options on exchanges based in New York, New York, including NYSE American Options, NYSE Arca Options, the Nasdaq Options Market ("NOM"), the Nasdaq MRX Options Exchange, the Nasdaq International Securities Exchange, and the Nasdaq GEMX Exchange; (b) the Defendants purchased options from Citadel Securities, which conducts options market making activity from New York, New York and other regional offices; and (c) the Defendants used trading accounts at TradeUP, which is based in New York, New York, to execute the insider trading scheme.

12.     Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), this Court has personal jurisdiction over the Defendants under the New York long-arm statute, N.Y. C.P.L.R. 302(a)(1), (3)(i)-(ii), because the Defendants purposefully directed their insider trading scheme at New York by, among other things, trading options on stocks that are listed on the Nasdaq Stock Exchange in New York; trading those options on exchanges based in New York; using brokerage accounts at a firm based in New York; and causing harm that the Defendants knew was likely to be suffered in New York and that Citadel Securities did, in fact, suffer in New York.

## FACTUAL ALLEGATIONS

### Citadel Securities' Role as Market Maker

13.     Citadel Securities is a registered broker-dealer that acts primarily as a market maker.  As one of the world's leading market makers, Citadel Securities provides liquidity across all 18 U.S. listed options exchanges.  Citadel Securities provides liquidity to

5

market participants in a variety of ways, including by posting actionable quotes to buy and sell

options, by responding to auctions, by providing indicative prices by responding to electronic

requests for quotes ("RFQs"), and by using active orders to trade against orders or quotes entered

by other participants.  Citadel Securities' expectation is that its counterparties are trading based

only on publicly available information, and the firm manages the risk from its market-making

activity through hedging transactions that it enters with the expectation that its counterparties are

not transacting on the basis of MNPI.

14.     Citadel Securities' clients are typically other broker-dealers who, in turn,

have their own end-customers.  These end-customers place orders with their broker-dealer,

which then routes those orders to Citadel Securities (or other trading venues or platforms) for

possible execution.  Citadel Securities does not have a relationship with the underlying end-

customer when it receives orders routed from another broker-dealer.  Likewise, Citadel

Securities does not know the identity of the end-customer when another broker-dealer or market

participant executes against Citadel Securities' public quotes on exchange.  As such, Citadel

Securities is not in the position to know the identity of the individual or individuals who are

ultimately directing trading activity, and in this case, profiting from insider trading.

### The China Securities Regulatory Commission Announcement

15.     On May 22, 2026, the China Securities Regulatory Commission sent

notices of enforcement to FUTU and TIGR relating to those companies' operations in China.

Reuters broke the story overnight in the U.S.—at approximately 4:33 AM Eastern Daylight

Time—and reported that FUTU and TIGR were alleged to have "illegally mov[ed] money to

6

foreign markets" and that "[o]nline brokers Tiger, Futu and Longbridge would be penalised for soliciting business in China without an onshore licence[.]"[1]

16.     TIGR made an SEC filing disclosing the enforcement announcement at approximately 9:35 AM Eastern Daylight Time on May 22, 2026.[2]  TIGR disclosed that the CSRC proposed a penalty and disgorgement of more than RMB 400 million (approximately $58.88 million).  FUTU made a similar disclosure at approximately 9:16 AM Eastern Daylight Time, which disclosed a proposed CSRC penalty of approximately RMB 1.85 billion (approximately $271 million).[3]  The fact that each company provided notice of these developments via filings with the SEC reflects their view that the CSRC development was material to their respective companies.

**FUTU and TIGR Stock Prices Plummet Following the CSRC Announcement**

17.     The price of FUTU and TIGR stock each dropped over 30% from their prior day's closing value after the CSRC Announcement.

18.     On May 21, 2026, the day before the CSRC Announcement, FUTU traded between $122.10 and $125.45, with a closing price of $123.86. On May 22, 2026, the price of FUTU at the opening of the U.S. market was $81.08 (a 34.54% decline from the preceding day's closing price), and FUTU traded between $80.50 and $94.88 and closed at $89.76 on May 22.

---

[1]     *Available at* https://www.reuters.com/world/asia-pacific/china-crack-down-illegal-cross-border-securities-activities-2026-05-22/ (last visited July 2, 2026).

[2]     *Available at* https://www.sec.gov/Archives/edgar/data/1756699/000119312526235622/tigr-ex99.htm (last visited July 2, 2026).

[3]     *Available at* https://www.sec.gov/Archives/edgar/data/1754581/000110465926065484/tm2615466d1_6k.htm (last visited July 2, 2026).

19.    On May 21, 2026, the day before the CSRC Announcement, TIGR traded between approximately $5.72 and $5.96, with a closing price of $5.84. On May 22, 2026, the day of the CSRC Announcement, the price of TIGR at the opening of the U.S. market was approximately $4.01 (a 31.34% decline from closing on May 21), and TIGR traded between $4.00 and $4.74 and closed at $4.36 on May 22.

**Defendants Engaged In An Insider Trading Scheme**

20.    Defendants' scheme involved repeated purchases of large volumes of short-dated out-of-the money put options for FUTU and TIGR in the lead up to the CSRC Announcement. Defendants were able to purchase these options very cheaply because the substantially out-of-the-money strike price and the short exercise period meant that it was highly unlikely that the put options would become exercisable. The volume of short-dated put options purchased, the timing of their purchases, the expiration dates of the put options, and their concentration among customers of three brokers strongly indicate that the trades originated from a select group of individuals with inside knowledge that the put options would soon become highly valuable. Indeed, absent possession of MNPI about the CSRC Announcement, the large purchases of short-dated and far out-of-the-money put options on TIGR and FUTU would have been highly economically irrational.

21.    As an example, on the morning of May 21, 2026—the day prior to the CSRC Announcement—a TradeUp customer purchased 800 put options on FUTU from Citadel Securities with a strike price of $102.45 and an expiration date of May 22. The customer purchased these options for a total premium of $20,000. The stock price of FUTU at the time these put options were purchased was $122.63. The TradeUp customer was betting that FUTU stock would decline by at least 16% in just one day. When FUTU stock declined more than 30%

following the CSRC Announcement on May 22, the put options increased in value to $1.688 million.

22.     As another example, on the morning of May 20, 2026, an Interactive Brokers customer purchased 2,200 put options on TIGR (900 of which were filled by Citadel Securities) with a strike price of $5.00 and an expiration date of June 5, 2026.  The total premium paid for the put options filled by Citadel Securities was approximately $16,000.  The stock price of TIGR at the time these put options were purchased was approximately $5.80.  When TIGR stock declined more than 30% following the CSRC Announcement, the Interactive Brokers customer made a gain of approximately $180,000.

23.     As a further example, on May 21, 2026, an order was placed on behalf of TradeUp and Futu Clearing customers for 3,000 put options on FUTU (2,000 of which were filled by Citadel Securities) with a strike price of $107.45 and an expiration date of May 22.  The total premium paid for the put options was approximately $120,000.  At the time these put options were purchased, FUTU was trading at approximately $123.24.  The put options were worth approximately $8 million following the decline in FUTU's stock price on May 22.

24.     As the chart below demonstrates, purchases of short-dated put options on FUTU and TIGR surged in the days immediately before the CSRC Announcement, which strongly indicates advance knowledge of the announcement and its timing.

9



25.    In a similar vein, the following chart shows a significant increase in put

options transactions in FUTU and TIGR that were flagged as potentially suspicious by Citadel

Securities in the lead up to the CSRC Announcement.



26.    Moreover, the flow of put options orders were heavily concentrated in just

three brokers: Interactive Brokers, Futu Clearing, and TradeUp, which were responsible for a

combined 76.8% of short-dated put option orders in FUTU and TIGR that Citadel Securities

received.  While Citadel Securities does not have insight into the identities of the underlying end-

customers who placed the orders, the concentration of the orders in these three brokers strongly

suggests that the orders originated from the same individuals or a coordinated group of

individuals with access to MNPI concerning the CSRC Announcement.



27.    Similarly, the concentration of orders in particular omnibus accounts at Futu Clearing and TradeUp—both of which specialize in facilitating trading for Asia-based investors—further suggests that the orders were being placed by the same individuals or by a coordinated group with access to MNPI concerning the CSRC Announcement.





28.    As another data point, the short-dated put options were not purchased at a steady cadence, but rather were purchased in bursts of activity, which suggests that the orders originated from a concentrated and/or coordinated group of traders.

11



**Citadel Securities Interacted FUTU/TIGR put flow — intraday bursts**

Futu/TradeUp/IBKR · top contracts · OTM · ≤30 DTE · cust BUY 5/7-21, cust SELL 5/22

29.     Taken together, the trade data demonstrates that a group of traders who were disproportionately customers at three brokers made large and concentrated purchases in short-dated and far out-of-the-money put options on FUTU and TIGR in the days leading up to the May 22 CSRC Announcement.  These put option purchases were highly economically irrational based on publicly available information.  The only logical explanation for these put option purchases is that the traders possessed MNPI about the nature and timing of the CSRC Announcement.

### Defendants Obtained MNPI in a Breach of Duty

30.     While the Defendants' identities and the details of their scheme are not presently known to Citadel Securities, their advanced pre-trade knowledge of MNPI in the form of the impending CSRC Announcement was inside information that could have only been known by or obtained from FUTU and TIGR, or insiders from those firms who had nonpublic, confidential knowledge of discussions with the CSRC about the enforcement action.

12

Defendants' trading based on this MNPI constituted or resulted from a breach of duty based on

China's securities laws[4] and on FUTU's[5] and TIGR's insider trading policies.[6]

**Defendants Profited from the Insider Trading Scheme at Citadel Securities' Expense**

31.    In total, Defendants paid premiums of approximately $14 million for their

insider trades and made at least $137 million in total profits from those trades.

32.    Citadel Securities served as a counterparty for a large portion of those

trades. With respect to the trades in which Defendants purchased put options from Citadel

Securities, Defendants paid total premiums of approximately $2 million and obtained profits of

approximately $28 million.

33.    In contrast to Defendants' gains, Citadel Securities experienced substantial

losses when the put options that Defendants purchased at a very low price—which reflected the

put options' very low value based on publicly available information—suddenly and

---

[4]    *Available at* http://en.npc.gov.cn.cdurl.cn/2019-12/28/c_674672.htm (last visited June 25, 2026).  Note that this is the official English translation published by the People's Republic of China.  The law prohibits "insiders, or any other person who has unlawfully obtained inside information" from using or sharing the information for the purpose of engaging in securities transactions before the inside information is published.

[5]    *Available at* https://sec.gov/Archives/edgar/data/1754581/000110465926043451/futu-20251231xex11d2.htm (last visited June 30, 2026).  The policy prohibits insider trading and sharing insider information outside of the company, with a specific prohibition against "tipping" insider information to anyone who trades in securities.

[6]    *Available at* https://www.sec.gov/Archives/edgar/data/1756699/000095017025056953/tigr-ex11_2.htm (last visited July 2, 2026).  The policy states that it is a violation of securities law "to purchase or sell, or to induce or recommend to another person to purchase or sell, a security while in possession of inside information" or otherwise use proprietary information for their own benefit.  It also notes that employees must "exercise extreme care" to protect inside and confidential information.

unexpectedly became in-the-money.  Citadel Securities lost approximately $28 million as the result of Defendants' insider trading.

## FIRST CLAIM FOR RELIEF
### (Insider Trading Private Right of Action Under Section 20A of the Exchange Act)

34.    Citadel Securities incorporates by reference and repeats and realleges the allegations of Paragraphs 1 through 33 of the Complaint above as if fully set forth herein.

35.    This claim is brought pursuant to Section 20A of the Exchange Act, 15 U.S.C. § 78t-1, which provides for a private right of action against "[a]ny person who violates [the Exchange Act] or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information."  Such person "shall be liable . . . to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class."

36.    The Defendants violated Section 10(b) and Rule 10b-5 of the Exchange Act (15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5) by using material, non-public information to purchase securities on securities exchanges based in the United States, specifically FUTU and TIGR put option contracts, in breach of a duty of trust and confidence.

37.    The characteristics of Defendants' put option purchases, including their timing and volume, indicate that Defendants possessed MNPI regarding the CSRC Announcement.

38.    Defendants unlawfully learned of the MNPI from FUTU and/or TIGR or some other source and traded on the MNPI in violation of fiduciary duties and/or duties of trust and confidence to the CSRC, FUTU, and/or TIGR.  Alternatively, Defendants learned of the MNPI from insiders at firms such as FUTU and/or TIGR, and those insiders benefited personally

14

by providing MNPI to the Defendants in violation of their fiduciary duty and/or duty of trust and confidence to the CSRC, FUTU, and/or TIGR, and the Defendants knew such facts to be the case.

39.    Citadel Securities sold FUTU and TIGR put options, as then-unknowing victims of Defendants' insider trading scheme, contemporaneously with the Defendants' purchase of that same class of securities, and therefore Citadel Securities has a private right of action for insider trading under Section 20A.

40.    Defendants financially benefited and Citadel Securities was financially harmed as a result of the Defendants' illegal insider trading activities.

**SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment Under New York Law)**

41.    Citadel Securities incorporates by reference and repeats and realleges the allegations of Paragraphs 1 through 40 of the Complaint above as if fully set forth herein.

42.    Defendants engaged in illegal insider trading by purchasing securities from Citadel Securities while the Defendants were in possession of MNPI about those securities and in breach of a duty of trust and confidence.

43.    As a result of their scheme, Defendants obtained substantial benefits at the expense of Citadel Securities.

44.    It would be against equity and good conscience to permit Defendants to retain any such funds or benefits.

45.    By reason of the foregoing, Citadel Securities is entitled to a judgment against Defendants awarding Citadel Securities restitution, disgorgement, and/or any other available remedy in an amount to be determined at the trial of this action.

15

## PRAYER FOR RELIEF

WHEREFORE, Citadel Securities prays that judgment be awarded in its favor and against Defendants as follows:

(a)     A judgment against Defendants for damages in an amount to be determined at trial, but in any event no less than approximately $28 million, plus pre- and post-judgment interest;

(b)     Disgorgement of all profits, benefits and other compensation obtained by Defendants as a result of the misconduct alleged herein;

(c)     Ordering Defendants to return the amounts by which they have been unjustly enriched;

(d)     An equitable accounting of the Defendants' profits;

(e)     Awarding Citadel Securities its reasonable costs and expenses incurred in this action, including a reasonable allowance of attorneys' fees and costs of suit; and

(f)     Awarding Citadel Securities such other and further relief as to the Court may seem just and proper.

## JURY TRIAL DEMANDED

Plaintiff respectfully demands a jury trial on all claims and issues so triable.

Dated:  New York, New York
        July 2, 2026

SIMPSON THACHER & BARTLETT LLP

*/s/ Jonathan K. Youngwood*
Lead Trial Counsel Jonathan K. Youngwood
(jyoungwood@stblaw.com)
Michael J. Osnato (michael.osnato@stblaw.com)
Anthony C. Piccirillo (anthony.piccirillo@stblaw.com)
425 Lexington Ave.
New York, NY 10017
(212) 455-2000
*Attorneys for Plaintiff Citadel Securities LLC*

16