**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUSQUEHANNA SECURITIES, LLC and SUSQUEHANNA INVESTMENT GROUP,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN DOES 1 THROUGH 100,<br><br>Defendants. | Case No. 1:26-cv-05474-AS |

**JOHN DOE DEFENDANT YANG JINGYAO'S RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND**
**ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**

1047928

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...............................................................................................1

II.  STATEMENT OF FACTS ...................................................................................2

III. ARGUMENT.......................................................................................................4

    A.   PLAINTIFFS FAIL TO SATISFY THE STANDARD FOR A
    PRELIMINARY INJUNCTION UNDER RULE 65 ...........................................4

        1.   There is no showing of irreparable harm ......................................................5

        2.   Plaintiffs have not demonstrated likelihood of success on the
        merits..........................................................................................................9

            (a)   Plaintiffs are not likely to succeed on their insider trading
            claim................................................................................................10

            (b)   Plaintiffs are not likely to succeed on their unjust
            enrichment claim.............................................................................15

            (c)   Plaintiffs engage in improper joinder ............................................17

        3.   The balance of hardships does not favor Plaintiffs....................................18

        4.   A preliminary injunction against Mr. Yang is not in the public
        interest........................................................................................................19

    B.   PLAINTIFFS FAIL TO SATISFY THE STANDARD FOR AN
    ATTACHMENT UNDER RULE 64....................................................................20

IV.  CONCLUSION...................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
   529 F. Supp. 3d 111 (S.D.N.Y. 2021)................................................................10, 11

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*,
   663 F. Supp. 3d 334 (S.D.N.Y. 2023)...............................................................10, 11

*In re Amaranth Nat. Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008)......................................................................16

*In Re Archegos 20A Litig.*,
   156 F.4th 108 (2d Cir. 2025) ....................................................................11, 12, 13

*Bernard v. Lombo*,
   2016 WL 7377240 (S.D.N.Y. Nov. 23, 2016).........................................................20

*Brenntag Int'l Chem. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999).......................................................................................7

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004).....................................................................................15

*Bulgari, S.P.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*,
   2026 WL 1894370 (S.D.N.Y. July 1, 2026) .....................................................17, 18

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011).......................................................................................4

*City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l, Inc.*,
   967 F. Supp. 2d 771 (S.D.N.Y. 2013)......................................................................10

*Collectanea J. Ltd. v. The P'ships & Unincorporated Ass'ns Identified on
   Schedule "A,"*,
   2026 WL 891930 (N.D. Ill. Mar. 31, 2026).............................................................17

*Colpitts v. Blue Diamond Growers*,
   527 F. Supp. 3d 562 (S.D.N.Y. 2021)......................................................................16

*Corsello v. Verizon New York, Inc.*,
   18 N.Y.3d 777 (2012) .........................................................................................15, 16

*Dirks v. SEC*,
  463 U.S. 646 (1983)................................................................................................13

*ESPN Enters., Inc. v. DISH Network L.L.C.*,
  810 F. Supp. 3d 452 (S.D.N.Y. 2025)................................................................1, 4, 5

*Firemen's Ins. Co. of Newark, N.J. v. Keating*,
  753 F. Supp. 1146 (S.D.N.Y. 1990)........................................................................5, 6

*Flame S.A. v. Primera Mar. (Hellas) Ltd.*,
  2010 WL 481075 (S.D.N.Y. Feb. 2, 2010).................................................................21

*Ger-Nis Int'l, LLC v. FJB, Inc.*,
  2007 WL 656851 (S.D.N.Y. Mar. 1, 2007) ..............................................................7, 8

*Gruber v. Gilbertson*,
  2019 WL 4458956 (S.D.N.Y. Sept. 17, 2019)......................................................10, 11

*Hotel 71 Mezz Lender LLC v. Falor*,
  14 N.Y.3d 303 (2010) .............................................................................................22

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
  917 F.2d 75 (2d Cir. 1990).........................................................................................7

*Kamerling v. Massanari*,
  295 F.3d 206 (2d Cir. 2002)........................................................................................5

*Kebapci v. Tune Core Inc.*,
  2016 WL 6804919 (E.D.N.Y. Nov. 16, 2016)..............................................................6

*Koehler v. Bank of Bermuda Ltd.*,
  12 N.Y.3d 533 (2009) ..............................................................................................22

*LG Cap. Funding, LLC v. Vape Holdings, Inc.*,
  2016 WL 3129185 (E.D.N.Y. June 2, 2016) ...............................................................6

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) ..............................................................................................16

*Marsh & McLennan Agency LLC v. Alliant Ins. Servs., Inc.*,
  2025 WL 3442819 (S.D.N.Y. Dec. 1, 2025) .............................................................10

*Mattel Inc. v. Entities*,
  2021 WL 12314427 (S.D.N.Y. Feb. 13, 2021).........................................................21

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997)...............................................................................................1, 4

*Meringolo v. Power2ship Inc.*,
  2003 WL 21750009 (S.D.N.Y. July 28, 2003) ..................................................6

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
  883 F.3d 32 (2d Cir. 2018)..................................................................................4

*Oneida Nation of New York v. Cuomo*,
  645 F.3d 154 (2d Cir. 2011)..............................................................................10

*Plaintiff Funding Holding, Inc. v. Carrera*,
  2017 WL 7411183 (E.D.N.Y. Feb. 6, 2017)...............................................1, 20, 21

*Random House, Inc. v. Rosetta Books LLC*,
  283 F.3d 490 (2d Cir. 2002)..............................................................................18

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007)................................................................15

*Rich v. Maidstone Fin., Inc.*,
  2001 WL 286757 (S.D.N.Y. Mar. 23, 2001) ......................................................15

*Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, &
  Unincorporated Ass'ns Identified on Schedule A Hereto*,
  735 F. Supp. 3d 981 (N.D. Ill. 2024) ................................................................17

*S.E.C. v. Compania Internacional Financiera S.A.*,
  2011 WL 3251813 (S.D.N.Y. July 29, 2011) .....................................................14

*S.E.C. v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc.*,
  2014 WL 5026153 (S.D.N.Y. Sept. 29, 2014)....................................................14

*S.E.C. v. Unifund SAL*,
  910 F.2d 1028 (2d Cir. 1990)............................................................................19

*Salman v. United States*,
  580 U.S. 39 (2016).............................................................................................11

*New York ex rel. Schneiderman v. Actavis PLC*,
  787 F.3d 638 (2d Cir. 2015)................................................................................9

*SEC v. Gonzalez de Castilla*,
  145 F. Supp. 2d 402 (S.D.N.Y. 2001)............................................................8, 19

*SEC v. Heden*,
  51 F. Supp. 2d 296 (S.D.N.Y. 1999)....................................................................8

*SEC v. One or More Unknown Traders in Sec. of Bioverativ, Inc.*,
  2018 WL 2244465 (S.D.N.Y. Feb. 9, 2018)..........................................................8

*SEC v. One or More Unknown Traders in Sec. of Gen. Commc'n, Inc.*,
    2017 WL 1407514 (S.D.N.Y. Apr. 13, 2017)..................................................................8

*Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*,
    164 F.4th 164 (2d Cir. 2025) ........................................................................................19

*Smith v. SEC*,
    653 F.3d 121 (2d Cir. 2011)..........................................................................................14

*Sperry v. Crompton Corp.*,
    8 N.Y.3d 204 (2007) .....................................................................................................16

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
    120 F.4th 59 (2d Cir. 2024) ............................................................................................4

*In re Sunac China Holdings Ltd.*,
    656 B.R. 715 (Bankr. S.D.N.Y. 2024)............................................................................9

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)...........................................................................11

*Tarnawski v. Zen Restoration Inc.*,
    2025 WL 3123968 (E.D.N.Y. Nov. 7, 2025)...............................................................5, 7

*Tecspec LLC v. Donnolo*,
    2026 WL 1361842 (2d Cir. May 15, 2026) .....................................................................7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).......................................................................................................13

*Two Hands IP LLC v. Two Hands Am., Inc.*,
    563 F. Supp. 3d 290 (S.D.N.Y. 2021)..........................................................................1, 4

*Unicon Mgmt. Corp. v. Koppers Co.*,
    366 F.2d 199 (2d Cir. 1966)............................................................................................8

*United States v. O'Hagan*,
    521 U.S. 642 (1997).......................................................................................................11

*VisionChina Media Inc. v. S'holder Representative Svrs., LLC*,
    967 N.Y.S.2d 338 (N.Y. App. Div. 2013) ....................................................................20

*Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*,
    2000 WL 1610790 (S.D.N.Y. Oct. 27, 2000)................................................................8

**Statutes**

Exchange Act Section 20A, 15 U.S.C. § 78t-1.........................................................5, 10, 11, 14

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2)......................11, 13, 14

**Other Authorities**

CPLR § 6201.................................................................................................................................20

CPLR § 6212.................................................................................................................................20

Fed. R. Civ. P. 4(f)(3) ..................................................................................................................19

Fed. R. Civ. P. 9(b) ................................................................................................................11, 15

Fed. R. Civ. P. 12.........................................................................................................................10

Fed. R. Civ. P. 20(a)(2).................................................................................................................17

Fed. R. Civ. P. 64.........................................................................................................................20

Fed. R. Civ. P. 65........................................................................................................................3, 4

## MEMORANDUM OF LAW

### I.     INTRODUCTION

A preliminary injunction is a "drastic" remedy, *ESPN Enters., Inc. v. DISH Network L.L.C.*, 810 F. Supp. 3d 452, 454 (S.D.N.Y. 2025) (Subramanian, J.) (cleaned up), as is a prejudgment attachment. *Plaintiff Funding Holding, Inc. v. Carrera*, 2017 WL 7411183, at *5 (E.D.N.Y. Feb. 6, 2017) ("[A]ttachment is an extraordinary remedy."). No such preliminary relief should be granted "unless the movant, by a clear showing, carries the burden of persuasion." *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 298 (S.D.N.Y. 2021) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Neither remedy is warranted here against unnamed Doe defendant Yang Jingyao ("Mr. Yang"), a solvent, Hong-Kong-based individual who promptly retained U.S. counsel to defend a lawsuit that contains *no particular allegations against him*. Indeed, Mr. Yang is not specifically named in the complaint, nor are any specific allegations made against him. He is not alleged to be insolvent, nor facing numerous creditors, nor unable to pay his debts, nor any other comparable allegations—and if those assertions were made, they would be false. *See* Declaration of Yang Jingyao in Support of Opposition to Preliminary Injunction ("Yang Decl.") ¶¶ 3-5. Ultimately, to support an asset restraint injunction against Mr. Yang, Plaintiffs rely on the fact that he resides overseas and that he is alleged to be a participant in the trading at issue in this lawsuit. This is insufficient. Plaintiffs have failed to meet their heavy burden to show that a prejudgment asset freeze is warranted, and thus no preliminary injunction or order of attachment should be imposed on Mr. Yang.[1]

---

[1] Mr. Yang takes no position at this time as to the imposition of a preliminary injunction against any other named or unnamed defendant.

## II.    STATEMENT OF FACTS

Plaintiffs Susquehanna Securities, LLC and Susquehanna Investment Group (collectively, "Susquehanna") bring this suit against unnamed Doe defendants, alleging a scheme of insider trading associated with an announced crackdown on cross-border investments by the China Securities Regulatory Commission ("CSRC"). *See generally* Compl.  Upon filing suit, Susquehanna applied for a temporary restraining order ("TRO") and preliminary injunction or attachment.  ECF Nos. 4, 5.  Intervenor Citadel Securities ("Citadel") (together with Susquehanna, "Plaintiffs") joined the suit as an intervenor and joined the request for preliminary injunctive relief.  ECF No. 27.

Plaintiffs' suit relies entirely on speculation and inference as to Mr. Yang.  There are no allegations specifically directed against Mr. Yang or any other individual defendant in the suit.  Rather, the allegations are based on group pleading, along with theories of liability pleaded loosely and in the alternative.  *See, e.g.,* Compl. ¶¶ 38–39 (alleging, in alternative theories, that each defendant may be a CSRC insider, Futu Holdings Limited ("Futu") insider, and/or an UP Fintech Holding Ltd ("UP") insider, and/or a tippee of unspecified insiders of either CSRC, Futu, and/or UP).

Plaintiffs identify unusual trading volume during the two weeks prior to a CSRC enforcement announcement on May 22, 2026 (defined in the Complaint as the "Crackdown News").  *See, e.g.*, Compl. ¶¶ 1, 21.  Plaintiffs allege that no one would have undertaken these trades absent insider information—ignoring all of the other potential reasons for this trading activity.  *See* Compl. ¶ 2 (asserting "the lack of any plausible alternative explanation for the trades").  As discussed further below in a non-exhaustive list, there are numerous plausible alternative explanations for the trades.

The Court granted a TRO on the same day the Complaint was filed, with no notice to or opposition from any unnamed defendant.  ECF No. 10.  The TRO enjoins defendants as follows: "Defendants are temporarily restrained and enjoined from transferring, encumbering, removing, or otherwise conveying proceeds held in accounts with the Brokers, and this order hereby enjoins Defendants' employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action, including the Brokers, from enabling or assisting Defendants in such uses."  ECF No. 10.  The order does not define "proceeds."  *See id.*

The Court issued an order to show cause why a preliminary injunction should not issue, with oppositions due by July 7, 2026, and set for hearing on July 10, 2026.  *Id.*  On July 9, 2026, the Court observed that the TRO could not be converted to a preliminary injunction absent adequate notice to defendants.  ECF No. 34 ("Along these lines, the Court notes that plaintiffs have not filed any proof of service with respect to any other defendant, so the Court cannot issue a preliminary injunction with respect to any other defendant.  *See* Fed. R. Civ. P. 65(a)(1).").  On July 10, 2026, the Court extended the TRO as to defendants other than Wenlei Song to July 24, 2026.  ECF No. 40.

To date, Mr. Yang has not been served, nor have Plaintiffs filed any proof of service as to him.  He retained counsel on July 16, 2026 (ECF No. 51), who filed a notice of appearance on July 20, 2026 (ECF Nos. 49–50).  On July 21, 2026, the Court extended the TRO as to Mr. Yang to August 5, 2026, and Mr. Yang's deadline to oppose Plaintiffs' application for preliminary injunction to July 23, 2026.  ECF No. 53.

1047928

## III.    <u>ARGUMENT</u>

The Court should deny Plaintiffs' application for a preliminary injunction and prejudgment attachment.

### A.    PLAINTIFFS FAIL TO SATISFY THE STANDARD FOR A PRELIMINARY INJUNCTION UNDER RULE 65.

"A preliminary injunction 'is one of the most drastic tools in the arsenal of judicial remedies.'" *ESPN Enters., Inc.*, 810 F. Supp. 3d at 454 (quoting *Two Hands IP LLC*, 563 F. Supp. 3d at 298). "[I]t 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Two Hands*, 563 F. Supp. 3d at 298 (quoting *Mazurek*, 520 U.S. at 972). As addressed further below, Plaintiffs—with their scattershot pleading and conclusory inferences—have failed to do so as to Mr. Yang.

The elements for a preliminary injunction are well-established. "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *Id.* (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)). Irreparable harm is the most important factor. *See State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024) ("The irreparable harm requirement is 'the single most important prerequisite for the issuance of a preliminary injunction.'") (citation omitted).

Further, "[i]n addition to complying with Rule 65(d)'s specificity requirements, district courts must take care to ensure that injunctive relief is not overbroad." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011). "An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." *Id.* at 145.

1.      *There is no showing of irreparable harm.*

Plaintiffs have failed to show irreparable harm absent a prejudgment asset restraint against Mr. Yang.  Plaintiffs' claimed injury can be remedied by an award of money damages, and Plaintiffs have made no showing that Mr. Yang is or will become judgment-proof (nor could they).

"To establish irreparable harm, the moving party must show an 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *ESPN Enters., Inc.*, 810 F. Supp. 3d at 459–60 (internal citations omitted). Although Plaintiffs assert equitable relief under both their unjust enrichment claim and their Section 20A claim, the only relief sought is monetary.  *See* Compl., prayer for relief.  The equitable relief sought is simply disgorgement, restitution, and equitable accounting, and thus duplicative of the money damages sought.  *Id.*  However, a preliminary injunction is only appropriate when "money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).  The movant must therefore show that the harm is such that they cannot be made whole through monetary damages—which Plaintiffs have not done.  *See id.*

Plaintiffs seek to protect themselves and burden Mr. Yang by freezing substantial assets during the pendency of this litigation.  But Plaintiffs' "present desire to preserve eventual recovery of monetary damages is insufficient on its own to warrant preliminary relief." *Tarnawski v. Zen Restoration Inc.*, 2025 WL 3123968, at *4 (E.D.N.Y. Nov. 7, 2025) (citing *Firemen's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1146, 1157 (S.D.N.Y. 1990)).  In other words, "[t]he fact that plaintiff may, in the interim, be marginally less secure with respect to the availability of a final money judgment, does not constitute 'irreparable harm' so as to

merit the extraordinary remedy of a preliminary injunction." *Firemen's Ins. Co.*, 753 F. Supp. at 1157.

More specifically, Plaintiffs cannot show they will be irreparably harmed absent an injunction *against Mr. Yang in particular*. To obtain a preliminary injunction when "monetary damages would ordinarily suffice[,]" a plaintiff must "allege facts (not conclusions) and provide evidence that the targeted defendants intend to frustrate judgment in the case at bar." *Kebapci v. Tune Core Inc.*, 2016 WL 6804919, at *3 (E.D.N.Y. Nov. 16, 2016) (internal citation omitted). None have been presented here, as Mr. Yang is not even mentioned in their Complaint. And the allegations Plaintiffs do make are scattershot, conclusory, and internally inconsistent. *See, e.g.*, Compl. ¶ 27 ("The Defendants' identities are unknown to Plaintiffs."); *id*. ¶ 38 ("The Defendants learned of the [material nonpublic information ("MNPI")] by virtue of their positions as insiders at Chinese securities regulators, Futu, and/or UP, and traded on the MNPI in violation of their fiduciary duty and/or their duty of trust and confidence to the Chinese government, Futu, and/or UP."); *id*. ¶ 39 ("Alternatively, the Defendants learned of the MNPI from insiders at Chinese securities regulators, Futu, and/or UP, and those insiders benefitted personally by providing MNPI to the Defendants in violation of their fiduciary duty and/or duty of trust and confidence to the Chinese government, Futu, and/or UP, and the Defendants knew such facts to be the case.").

Thus, there are no allegations indicating that Mr. Yang is insolvent or otherwise not collectable in the event that Plaintiffs can prevail in this litigation—nor could there be. *See* Yang Decl. ¶¶ 3-5. Plaintiffs have failed to satisfy their burden of establishing the need for a prejudgment asset restraint. *See LG Cap. Funding, LLC v. Vape Holdings, Inc.*, 2016 WL 3129185, at *4 (E.D.N.Y. June 2, 2016) (quoting *Meringolo v. Power2ship Inc.*, 2003 WL 21750009, at *5 (S.D.N.Y. July 28, 2003)) ("[The plaintiff] has at most, shown that there is a

possibility that the company may be insolvent by the time this case is fully litigated; that mere possibility is speculative and cannot satisfy [the plaintiff]'s burden to show that it is likely to suffer irreparable harm."); *Tarnawski*, 2025 WL 3123968, at *9 ("Therefore, because plaintiffs fail to provide substantial evidence that defendants intend to frustrate judgment in the case at bar, they fail to demonstrate actual and imminent harm and the extraordinary remedy of a preliminary injunction is not warranted."). Plaintiffs must show more than a mere *possibility* of harm; they must show that they are "*likely* to suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *see also id.* ("Likelihood sets, of course, a higher standard than possibility.").

The cases regarding irreparable harm cited by Plaintiffs are readily distinguishable. In *Tecspec LLC v. Donnolo*, the court found irreparable harm and granted a preliminary injunction prohibiting the use of trade secrets—which is entirely different from a prejudgment asset restraint. 2026 WL 1361842, at *4 (2d Cir. May 15, 2026) ("The loss of customer relationships and goodwill that results from a breach of a covenant not to compete are generally sufficient to demonstrate irreparable harm."). Further, in *Brenntag Int'l Chem. v. Bank of India*, the court found irreparable harm where a party was in the midst of an "involuntary liquidation proceeding." 175 F.3d 245, 248 (2d Cir. 1999). Even in that case, the court recognized that monetary damages alone are not irreparable harm. *See id.* at 249 ("As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm."). The other cited cases are likewise unsupportive of Plaintiffs' position. For example, in *Ger-Nis Int'l, LLC v. FJB, Inc.*, the defendant acknowledged that he "had insufficient funds to pay the debt," there were "five other reparations proceedings for non-payment against defendant," and two other plaintiffs had claims for approximately $221,000 in

non-payment claims. 2007 WL 656851, at \*2 (S.D.N.Y. Mar. 1, 2007). No similar facts are alleged here. In *Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*, the frozen funds had been held in a trust, to which the plaintiffs were beneficiaries and therefore had an equitable interest in those particular funds. 2000 WL 1610790, at \*1 (S.D.N.Y. Oct. 27, 2000). The remaining cases—*SEC v. Gonzalez de Castilla*, 145 F. Supp. 2d 402 (S.D.N.Y. 2001), *SEC v. One or More Unknown Traders in Sec. of Bioverativ, Inc.*, 2018 WL 2244465, at \*1-3 (S.D.N.Y. Feb. 9, 2018) (granting unopposed injunction), and *SEC v. One or More Unknown Traders in Sec. of Gen. Commc'n, Inc.*, 2017 WL 1407514, at \*1-2 (S.D.N.Y. Apr. 13, 2017) (granting TRO)—were brought by the government, which faces a lighter standard for a preliminary injunction asset freeze that does not include irreparable injury. *See SEC v. Heden*, 51 F. Supp. 2d 296, 298 (S.D.N.Y. 1999) ("To obtain an asset freeze, all the SEC need show is that 'it is likely to succeed on the merits,' or that '[t]here is a basis to infer that the appellants traded on inside information.' Unlike a private litigant, the SEC need not show the risk of irreparable injury.") (cleaned up); *see also Gonzalez de Castilla*, 145 F. Supp. 2d at 414, n.10 ("As the SEC is not an ordinary litigant, but a statutory guardian charged with safeguarding the public interest in enforcing the securities laws, it need not make the typical showing of a likelihood of irreparable injury, favorable balancing of the equities, or the unavailability of a remedy at law.") (cleaned up). Nevertheless, *Gonzalez de Castilla* noted that "the defendants' nationality, standing alone, is insufficient to warrant freezing their assets." *Id.* at 240.[2]

---

[2] Further, a case from 1966, *Unicon Mgmt. Corp. v. Koppers Co.*, 366 F.2d 199 (2d Cir. 1966), cited by Plaintiffs for the proposition that a preliminary injunction should preserve the "status quo" is likewise inapplicable. First, Mr. Yang's assets were *not* frozen pre-suit, so the injunction seeks to change the pre-suit status quo. Second, in that action, the court approved a preliminary injunction to maintain business operations, not freeze assets of a defendant. *See id.* at 203 (affirming "a preliminary injunction in favor of Koppers against Unicon and the Feldmans which restrained them from destroying the files of the Malan Department, from denying access to the

Finally, the specific record related to Mr. Yang to date weighs against imposition of a prejudgment asset restraint. Mr. Yang has promptly appeared in this case through counsel. *See* ECF Nos. 47-50. He is an individual, not a foreign corporation that could dissolve. There is no evidence that he is insolvent or holds any substantial debts that he cannot pay. Moreover, Mr. Yang is based in Hong Kong, not mainland China, *see* Yang Decl. ¶ 2, and therefore any potential concerns about ultimate enforceability of U.S. judgments in mainland China are inapposite.[3]

> 2.     *Plaintiffs have not demonstrated likelihood of success on the merits.*

To obtain a preliminary injunction, Plaintiffs must also demonstrate "a likelihood of success on the merits" or, at minimum, raise "sufficiently serious questions going to the merits of [their] claims to make them fair ground for litigation" plus a balance of hardships tipping decidedly in the movants' favor. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638,

---

officers and personnel of Malan to authorize Koppers' employees, and from acting or participating in the management and operation of the Malan Construction Department of Koppers Company, Inc., except as and to the extent requested and authorized on behalf of Koppers Company, Inc.") (cleaned up).

[3] "Hong Kong is a Special Administrative Region of the PRC, which in most respects has retained a high degree of autonomy from the mainland during the 27 years since the United Kingdom's handover of Hong Kong to the PRC in 1997. Since that time, Hong Kong has had its own constitution, known as the Basic Law, which governs Hong Kong's separate political, economic and legal systems." *In re Sunac China Holdings Ltd.*, 656 B.R. 715, 718 (Bankr. S.D.N.Y. 2024) (citing Department of Justice, Government of the Hong Kong Special Administrative Region, *Our Legal System* (Nov. 30, 2023), available at https://www.doj.gov.hk/en/our_legal_system/basic_law.html [https://perma.cc/KD7R-ZWNK].)*; see also id.* at 732, n.9 ("As former members of the British Commonwealth, both Hong Kong and the Cayman Islands have inherited Great Britain's common law traditions."); *see generally* Department of Justice of Hong Kong SAR, Reciprocal Enforcement of Judgments – Civil and Commercial Foreign Judgments, available at https://www.doj.gov.hk/en/legal_dispute/rejccfj.html ("Foreign judgments in civil and commercial matters may be enforced in the Hong Kong SAR under a statutory registration scheme or at common law.").

---

650 (2d Cir. 2015) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)).  To satisfy that standard, Plaintiffs must demonstrate their claims are legally viable and factually grounded as to each defendant against whom injunctive relief is sought.  *See Marsh & McLennan Agency LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 3442819, at *8 (S.D.N.Y. Dec. 1, 2025) (where a movant "seeks an injunction against multiple [d]efendants, [the movant] must satisfy its burden as to each [d]efendant to obtain an injunction against that [d]efendant.").  Plaintiffs allege two claims: insider trading in violation of Section 20A of the Exchange Act, and unjust enrichment.  As to Mr. Yang, Plaintiffs do not and cannot meet this burden as to either claim.[4]

(a)    <u>Plaintiffs are not likely to succeed on their insider trading claim.</u>

Plaintiffs' claim for insider trading under Section 20A requires "(1) a predicate violation of the Exchange Act; (2) contemporaneous trading by defendant and plaintiff; and (3) that the defendant possessed 'material, nonpublic information.' at the time of the trading activity." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*, 663 F. Supp. 3d 334, 353 (S.D.N.Y. 2023) (citing C*ity of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l, Inc.*, 967 F. Supp. 2d 771, 801 (S.D.N.Y. 2013)).  Further, there are two theories of insider trading.  "Under the traditional or classical theory . . . , a corporate insider is prohibited from trading shares of that corporation based on material non-public information in violation of the duty of trust and confidence insiders owe to shareholders." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 176 (S.D.N.Y. 2021) (quoting *Gruber v. Gilbertson*, 2019 WL 4458956, at *2 (S.D.N.Y.

---

[4] Mr. Yang anticipates bringing a motion to dismiss in due course and preserves all arguments for dismissal, including under Rule 12(b)(2) and 12(b)(6), whether or not presented here. Further, although Plaintiffs assert that this Court has personal jurisdiction over him, Mr. Yang is investigating the factual bases for this assertion and reserves the right to seek dismissal for lack of personal jurisdiction upon a further developed record.

Sept. 17, 2019)). By contrast, "the misappropriation theory outlaws trading on the basis of nonpublic information by a corporate 'outsider' in breach of a duty owed not to a trading party, but to the source of the information." *In Re Archegos 20A Litig.*, 156 F.4th 108, 118 (2d Cir. 2025) (quoting *United States v. O'Hagan*, 521 U.S. 642, 652 (1997)). "Under both theories, the person who owes a fiduciary duty of trust and confidence can be liable for using material non-public information to profit by trading on or 'tipping' the confidential information to others." *Id.* at 116 (citing *Salman v. United States*, 580 U.S. 39, 42 (2016)).

Plaintiffs' claim under Section 20A is subject to the heightened pleading standard of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d at 175 (quoting *Gruber*, 2019 WL 4458956, at *2). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *Altimeo Asset Mgmt.*, 663 F. Supp. 3d at 352. In the context of an insider trading claim, the PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendants acted with [knowledge]." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 311 (S.D.N.Y. 2008) (applying heightened pleading standards to claims brought under Section 20A).

Applying Rule 9(b) and the PSLRA pleading standard, Plaintiffs fail to establish a Section 20A violation as to Mr. Yang under any theory of insider trading. Although Plaintiffs contend insider trading is the only plausible explanation for the at-issue trades, *see* Compl. ¶ 2, it does not take much imagination to develop alternative explanations. Perhaps there were unusual price movements, technical indicators, or selling pressure discerned from publicly available market data that a savvy investor might notice. Perhaps there were rumors circulating prior to

the May 22 news articles, or information available in segments in the Chinese-speaking Internet that were not accessible from the United States. Perhaps there had been earlier periods of crackdown against similar companies or industry-wide regulatory actions, and investors predicted that it might happen again. Certainly, this is not an exhaustive list of plausible alternatives to insider trading. Moreover, Plaintiffs do not allege specifically *when* Mr. Yang—or any other specific defendant—supposedly engaged in the relevant transactions, lumping together the trading activity over a two-week period. *See, e.g.*, Compl. ¶ 1.

Moreover, Plaintiffs do not allege how Mr. Yang obtained MNPI about the impending CSRC enforcement action. The Complaint speculates that "[t]he facts of this case *suggest* two categories of insiders who could have either traded directly on the MNPI . . . or tipped others: (i) Chinese securities regulators; and (ii) Futu and UP personnel who had knowledge of discussions with Chinese securities regulators about the enforcement action." Compl. ¶ 27 (emphasis added). But it does not allege Mr. Yang is himself either a Chinese regulator or an employee of Futu or UP (nor is he). In fact, the Complaint does not identify *any* regulator or Futu/UP employee who possessed MNPI and communicated MNPI to Mr. Yang, much less facts establishing that Mr. Yang had any relationship whatsoever with such an individual. Plaintiffs offer no allegations of meetings, communications, relationships or other contacts between Mr. Yang and any individual in the "two categories of insiders" identified in the Complaint. Rather, the Complaint relies entirely on speculation from the trading pattern itself, and is therefore insufficient to satisfy the applicable pleading standards. *See In Re Archegos 20A Litig.*, 156 F.4th at 118, 120 (dismissing insider trading claims under classical theory where complaint did not plausibly allege that defendant "was a corporate insider, or otherwise owed a fiduciary or fiduciary-like duty to the Issuers' shareholders" and under misappropriation theory where

complaint failed "to plead sufficient facts to imply the content and circumstances" of the alleged tips and holding that a spike in trading volume is insufficient on its own to support tipping theory).

Plaintiffs also fail to establish scienter. To satisfy the requirements of the PSLRA, a plaintiff must "plead with particularly facts that give rise to a 'strong'—*i.e.*, a powerful or cogent—inference" of fraudulent intent. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007). Plaintiffs make no particularized showing of scienter as to Mr. Yang. Instead, their theory rests on the proposition that the timing and profitability of the subject trades create an inference of scienter because "[u]pon information and belief, there was no new public information about FUTU or TIGR released between May 7, 2026 and May 21, 2026 that would provide a reasonable basis for the Defendants to place so many high-risk, high-reward purchases." Compl. ¶ 26. But profitable options trading is not, by itself, evidence of fraud. Without particularized allegations about *this* defendant's state of mind—his access to information, his trading history, his relationships with insiders—Plaintiffs cannot establish the "strong inference of scienter" required by the PSLRA, 15 U.S.C. § 78u-4(b)(2), let alone the "likelihood of success" required for a preliminary injunction. *See Tellabs, Inc.*, 551 U.S. at 323 ("To qualify as 'strong' within the intendment of § 21D(b)(2) [of the PSLRA], we hold, an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.").

Moreover, where the theory of liability is tippee trading, the plaintiff must prove that "the tipper received a personal benefit in exchange for providing the confidential information." *In Re Archegos*, 156 F.4th at 116; *Dirks v. SEC*, 463 U.S. 646, 662 (1983) ("[T]he test is whether the insider personally will benefit, directly or indirectly, from his disclosure."). Plaintiffs assert only

1047928                                                   13

that it is "implausible" that information of this nature would have been shared without a personal benefit to the tipper. Compl. ¶ 31. But this is mere speculation. Without any factual allegations about the identity of the tipper, the nature of the benefit received, or the relationship between tipper and Mr. Yang, Plaintiffs cannot satisfy this element. The cases Plaintiffs cite in their application (ECF No. 5 at 16) do not support a different result, as those cases are all SEC enforcement actions against unidentified defendants—not private lawsuits subject to the PSLRA—and therefore subject to the less stringent standards governing the SEC's requests for equitable relief including asset freezes. *See Smith v. SEC*, 653 F.3d 121, 127–28 (2d Cir. 2011) (discussing relaxed standards applicable to the SEC). Even so, the cited requests for injunction were supported by more than mere speculation. For instance, in *S.E.C. v. Compania Internacional Financiera S.A.*, 2011 WL 3251813 (S.D.N.Y. July 29, 2011), the SEC had identified specific tipped information and the circumstances of the tip. *See id.* at *8 ("De Canniere asserts he was told by a broker on July 1, 2, or 3 that 'hot money' was going into Arch. This tip, in the context of recent flat trading of Arch stock and the lack of any recent press about Arch, suggests the broker was aware of some material non-public information[.]"). And in *S.E.C. v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc.*, 2014 WL 5026153, (S.D.N.Y. Sept. 29, 2014), the SEC had narrowed the list of potential tippers to (a) a journalist reporting on the subject acquisition; or (b) someone close to him. *See id.* at *7 ("The two well-timed sets of trades, in conjunction with Critchley's well-timed articles . . . are a sufficient basis for the inference that Critchley, or someone close to him, was feeding information to [the defendants]."). Here, especially where Plaintiffs are private litigants bearing the burden of proving each element of a Section 20A claim, they must do more than gesture at possible scenarios to satisfy their burden.

Group pleading against defendants at large is insufficient under Rule 9(b). "[W]hen fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant. A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b)." *Rich v. Maidstone Fin., Inc.*, 2001 WL 286757, at *6 (S.D.N.Y. Mar. 23, 2001) (cleaned up); *see also In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007). Here, Plaintiffs fail to allege any specifics against Mr. Yang. *See* Compl. ¶¶ 38-39.

Accordingly, Plaintiffs are not likely to succeed on the merits of their insider trading claim as to Mr. Yang.

> (b)   <u>Plaintiffs are not likely to succeed on their unjust enrichment claim.</u>

In addition, Plaintiffs are not likely to succeed on their claim for unjust enrichment. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (internal citation omitted). Importantly, unjust enrichment is "not a catchall cause of action to be used when others fail." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). Plaintiffs' unjust enrichment claim is likely to fail for multiple reasons.

*First*, Plaintiffs argue that, because "Defendants used MNPI to profit from Plaintiffs in breach of the federal securities laws," therefore "Defendants were clearly enriched," that "this enrichment was at Plaintiffs' direct expense," and "equity and good conscience require the return of these funds." ECF No. 5 at 17-18. Because Plaintiffs' unjust enrichment is nothing more than a recasting of their statutory claim, and they have articulated no independent theory of unjust

conduct, their unjust enrichment claim fails for being duplicative. *See, e.g.*, *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 592 (S.D.N.Y. 2021) (dismissing unjust enrichment claim "because it merely duplicates" the plaintiff's statutory claims). Additionally, Plaintiffs' unjust enrichment claim fails for the same reasons articulated above. *See supra* Section III.A.2.a; *see also Corsello*, 18 N.Y.3d at 791 ("To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.").

*Second*, although direct privity is not required, there needs to be a non-attenuated connection between the parties. *See, e.g., In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 547 (S.D.N.Y. 2008) (dismissing unjust enrichment claim where the plaintiffs "have not alleged any direct relationship, trading or otherwise, between themselves and any [defendant]"); *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215–16 (2007) (rejecting unjust enrichment claim where connection between the parties was "simply too attenuated to support such a claim"); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 183 (2011) ("Without sufficient facts, conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal.") (internal citations omitted). Plaintiffs fail to allege anything other than a conclusory connection to each unnamed defendant here, and Plaintiffs acknowledge that they were not the counterparty to *each* transaction. *See* Compl. ¶ 33 ("Plaintiffs served as counterparties for a substantial portion of the Subject Trades."). Thus, Plaintiffs have not demonstrated a likelihood of success against Mr. Yang on their claim for unjust enrichment.

(c)    Plaintiffs engage in improper joinder.

In addition, Plaintiffs cannot establish likelihood of success on the merits due to improper joinder of Mr. Yang with numerous other defendants.  Plaintiffs have not satisfied their obligation to establish proper joinder of defendants, including Mr. Yang, in a single action.  *See* Fed. R. Civ. P. 20(a)(2).  Where the facts allege nothing more than a series of "separate instances," joinder is inappropriate.  *See, e.g., Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 735 F. Supp. 3d 981, 985-86 (N.D. Ill. 2024) ("But these connections suggest nothing more than separate instances of infringement attributable to different defendants, not events arising out of the same transaction or occurrence. . . . It is plaintiff's burden to show joinder is appropriate, [and] it has failed to do so.").

Further, "[w]here joinder is improper, the underlying case must be restructured before the Court can make a rational, defendant-specific assessment of whether the requirements for preliminary injunctive relief are satisfied as to any particular defendant or coherent group of defendants.  To maintain a sweeping, collective asset freeze across hundreds of defendants while the case is restructured would be to perpetuate the very harm that the misjoinder finding is designed to remedy." *Collectanea J. Ltd. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A,"*, 2026 WL 891930, at *4-5 (N.D. Ill. Mar. 31, 2026) (preliminary injunction dissolved upon finding of improper joinder); *see also Bulgari, S.P.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2026 WL 1894370, at *4 (S.D.N.Y. July 1, 2026) ("[T]here is no indication here that the ten Defendants 'coordinated action' to infringe on Plaintiff's marks.  Because Plaintiff has failed to satisfy the Rule 20(a)(2)'s preconditions for permissive joinder of parties, joinder of the ten Defendants in one action is not appropriate.").

The *Bulgari* court noted as well that it is "extremely inefficient to litigate what are effectively ten separate infringement actions in a single lawsuit" and dismissed all but one defendant. *Id.* at *5.

                3.      *The balance of hardships does not favor Plaintiffs.*

The balance of hardships does not weigh in Plaintiffs' favor and, instead, favors Mr. Yang. If Plaintiffs cannot show a likelihood of success on the merits and instead attempt to show "sufficiently serious questions going to the merits," they also need to show "a balance of hardships tipping decidedly in the movant's favor." *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002). In their motion, Plaintiffs contend—without specificity towards any particular defendant—that "Plaintiffs, on the other hand, may lose tens of millions of dollars if Defendants are permitted to remove their ill-gotten gains from their brokerage accounts and dissipate such funds and/or remove them overseas and out of Plaintiffs' reach." ECF No. 5 at 24–25. This assertion fails to resonate as to Mr. Yang. He is a solvent, Hong Kong-based individual, who has appeared in this action through counsel. *See* Yang Decl.

Moreover, Mr. Yang will suffer significant hardship if his brokerage account remains frozen as a result of this Court's TRO. ECF No. 10 ("Defendants are temporarily restrained and enjoined from transferring, encumbering, removing, or otherwise conveying proceeds held in accounts with the Brokers, and this order hereby enjoins Defendants' employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action, including the Brokers, from enabling or assisting Defendants in such uses[.]"). The TRO does not identify the amount of "proceeds" for any defendant, thus apparently leading the brokers to pause any activity within the brokerage accounts to avoid a potential violation of the order.

4.    *A preliminary injunction against Mr. Yang is not in the public interest.*

Plaintiffs assert, uncontroversially, that "the public interest weighs strongly in favor of enforcing this nation's securities laws and ensuring investor confidence in the integrity of the U.S. securities markets." ECF No. 5 at 25.  But Plaintiffs fail to explain how the broad restraint of assets held by an individual defendant, against whom Plaintiffs have just speculation, furthers this public interest.  Unlike in the cases on which Plaintiffs relies, the movant here is a sophisticated, well-capitalized institutional market maker acting in its own commercial interest, not a government regulator.  As noted, courts in the Second Circuit apply a different and abbreviated standard to requests for injunctive relief by the SEC as compared to private litigants. *See Gonzalez de Castilla*, 145 F. Supp. 2d at 415.  No governmental agency has joined this action, filed a parallel enforcement proceeding, or otherwise indicated the extraordinary remedy of a pre-judgment asset freeze is warranted against Mr. Yang.

Plaintiffs' evidence is entirely circumstantial—they have identified no insider, no tipper, no communication of MNPI, and no breach of duty by any identified person.  There is no public interest in restraining the assets of individuals against whom specific facts have not been alleged—and indeed, the public interest weighs against improper asset restraints.[5]

---

[5] There is also public interest in ensuring due process rights for all litigants and compliance with international law.  In granting the TRO, the Court ordered service of the TRO application papers under Rule 4(f)(3) by email and FedEx.  ECF No. 10.  When seeking this relief in the relevant portion of their TRO application, ECF No. 5, Plaintiffs only cited *S.E.C. v. Unifund SAL*, a case from 1990 in which the court evaluated service outside the United States in Lebanon.  910 F.2d 1028, 1034 (2d Cir. 1990).  Plaintiffs did not inform the Court of the Second Circuit's recent decision in *Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 169 (2d Cir. 2025), in which the court analyzed in depth the issue of service by email in mainland China under Rule 4(f)(3). *See id.* at 169, 172 ("Smart Study also moved *ex parte* for an order permitting it to serve copies of the summons, complaint, TRO, and order to show cause on all defendants by email pursuant to Federal Rule of Civil Procedure 4(f)(3). . . .  we conclude that email service on the Chinese defendants is prohibited by the Hague Service Convention, and thus improper under Rule 4(f)(3).").  The Court has not yet undertaken a thorough Rule 4(f)(3)

### B.    PLAINTIFFS FAIL TO SATISFY THE STANDARD FOR AN ATTACHMENT UNDER RULE 64.

Plaintiffs' alternative request for an attachment under Rule 64 should also be denied. Rule 64 allows for the imposition of an attachment in accordance with applicable state law. Fed. R. Civ. P. 64. "There must be more than a showing that attachment would, in essence, be helpful." *Plaintiff Funding Holding, Inc.*, 2017 WL 7411183, at *3 (quoting *VisionChina Media Inc. v. S'holder Representative Svrs., LLC*, 967 N.Y.S.2d 338, 346 (N.Y. App. Div. 2013)). "[A]ttachment is an extraordinary remedy." *Id.* at *5. Accordingly, "New York attachment statutes are construed strictly against those who seek to invoke the remedy." *Id.* at *2 (quoting *Bernard v. Lombo*, 2016 WL 7377240, at *3 (S.D.N.Y. Nov. 23, 2016)). "[T]he mere fact that defendant is a non-domiciliary residing without the State of New York is not sufficient ground for granting an attachment." *VisionChina Media Inc.*, 967 N.Y.S.2d at 347 (citation omitted); *see also id.* (reversing motion court's order granting and confirming orders of attachment where "[t]he sellers ha[d] shown no evidence that the buyers lack[ed] sufficient assets, or that they w[ould] choose to hide or otherwise dispose of their assets").

For an attachment in New York, CPLR § 6212 governs and requires a movant to show "[1] that there is a cause of action, [2] that it is probable that the plaintiff will succeed on the merits, [3] that one or more grounds for attachment provided in section 6201 exist, and [4] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." CPLR § 6212(a). Under CPLR § 6201, an order of attachment may be granted, among other circumstances, where the defendant "is a nondomiciliary residing without the state."

---

analysis in conjunction with any jurisdiction outside the United States, including but not limited to Hong Kong and mainland China. Mr. Yang's undersigned counsel accepted service of the TRO papers on July 22, 2026, as a professional courtesy, but he does not concede that proper service of the TRO papers had occurred prior to that date, nor has Mr. Yang been served with the Complaint.

Plaintiffs cannot satisfy the first and second factors because they have not articulated a cause of action that is probable to succeed. The discussion above regarding Plaintiffs' lack of likelihood of success on the merits against Mr. Yang applies to this analysis. "To show a probability of success on the merits, the moving party must demonstrate by affidavit that it is more likely than not that it will succeed on its claims." *Flame S.A. v. Primera Mar. (Hellas) Ltd.*, 2010 WL 481075, at *4 (S.D.N.Y. Feb. 2, 2010). "While all legitimate inferences should be drawn in favor of the party seeking attachment, the moving party nevertheless must make an evidentiary showing of proof stronger than that required to establish a prima facie case in order to satisfy this requirement." *Id.* (internal quotation marks and citations omitted).

Further, even if the Court finds that Plaintiffs satisfy the four statutory elements, the decision to impose an attachment is nonetheless discretionary. *See, e.g.*, *id.* ("[T]he granting of a prejudgment attachment order is discretionary, and even when the statutory requisites are met, the order may be denied.") (internal quotation marks and citation omitted); *Plaintiff Funding Holding, Inc.*, 2017 WL 7411183, at * ("[E]ven if [plaintiff] had met its burden with respect to the required statutory elements, 'it would still be possible to deny the harsh remedy of attachment, for attachment is a discretionary remedy.'") (cleaned up).

Here, Plaintiffs have made no showing that Mr. Yang is insolvent, judgment-proof, or otherwise likely to be uncollectable. To the contrary, Mr. Yang has appeared promptly in this action through U.S. counsel. *See also* Yang Decl. Moreover, as another court in this district has observed, U.S. judgments may be enforced in Hong Kong, where Mr. Yang resides. *See Mattel Inc. v. Entities*, 2021 WL 12314427, at *6 (S.D.N.Y. Feb. 13, 2021) ("In its response, defendants explained that judgments from the United States are routinely enforced and accorded

full faith and credit in Hong Kong. . . .  The Court is thus satisfied that there is no 'need' for a prejudgment attachment, because [plaintiff] could enforce a judgment in Hong Kong.").

Finally, Plaintiffs seek an attachment of intangible assets, i.e., proceeds from certain transactions.  *See* ECF No. 10 ("Defendants are temporarily restrained and enjoined from transferring, encumbering, removing, or otherwise conveying proceeds held in accounts with the Brokers[.]").  Plaintiffs have not shown that Mr. Yang has any accounts located within New York.  If a court has personal jurisdiction over the defendant, it can attach intangible assets located outside New York.  *See Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 312 (2010) ("[A] court with personal jurisdiction over a nondomiciliary present in New York has jurisdiction over that individual's tangible or intangible property, even if the situs of the property is outside New York.").  But if the court lacks personal jurisdiction over the defendant, it *cannot* attach intangible assets outside the state.  *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 538 (2009) ("It is well established that, where personal jurisdiction is lacking, a New York court cannot attach property not within its jurisdiction.").  To the extent the Court determines that it lacks personal jurisdiction over Mr. Yang, any attachment of assets outside New York would be impermissible.[6]

Accordingly, the Court should deny Plaintiffs' alternative requested relief of an attachment against Mr. Yang.

## IV.    CONCLUSION

As set forth above, Mr. Yang respectfully requests that the Court deny the application for preliminary injunction and attachment as to him.

---

[6] At this point, the record is undeveloped as to the specifics of Mr. Yang's trades and whether he may or may not be subject to personal jurisdiction in New York.  Pending further development of the record, Mr. Yang preserves the issue.

Dated:  July 23, 2026

Respectfully submitted,

*/s/ Katherine Burghardt Kramer*

Katherine Burghardt Kramer **(LEAD TRIAL COUNSEL)**
Hannah L. Miller
DTO LAW
307 5th Avenue, 12th Floor
New York, New York 10016
Telephone: (646) 995-5400
Facsimile:   (213) 335-7802
Email: kkramer@dtolaw.com
Email: hmiller@dtolaw.com

Scott Paetty (*pro hac vice* forthcoming)
DTO LAW
915 Wilshire Boulevard, Suite 1950
Los Angeles, California 90017
Telephone: (213) 335-6999
Facsimile:  (213) 335-7802
Email: spaetty@dtolaw.com

Longhao Wang (*pro hac vice* forthcoming)
Coparity Law LLP
418 Broadway #11509
Albany, NY 12207
Telephone: (718) 200-9474
Email: lwang@coparitylaw.com

*Attorneys for John Doe Defendant*
*YANG JINGYAO*

1047928

23

**CERTIFICATE OF COMPLIANCE**

I, Katherine Burghardt Kramer, certify that this response in opposition to Plaintiffs' application for a temporary restraining order and preliminary injunction was prepared using Microsoft Word. This document uses a proportionally spaced typeface Times New Roman, 12-point and complies with the formatting requirements of the Court.  I further certify that this memorandum contains 7,192 words, excluding the caption, table of contents, table of authorities, signature block, and this Certificate of Compliance, and that it complies with the word count limitation set forth in Local Civil Rule 7.1(c). The word count is based on the word-processing system used to prepare this document.

Dated: July 23, 2026                                   /s/ Katherine Burghardt Kramer
                                                       Katherine Burghardt Kramer

1047928                                24