UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUSQUEHANNA SECURITIES, LLC and
SUSQUEHANNA INVESTMENT GROUP,

                         Plaintiffs,

          - against -

JOHN DOES 1 THROUGH 100,

                       Defendants.

Case No. 26 Civ. 5474 (AS)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION OR ATTACHMENT IN THE ALTERNATIVE

FRIEDMAN KAPLAN SEILER
 ADELMAN & ROBBINS LLP
7 Times Square
New York, NY  10036-6516
(212) 833-1100

*Attorneys for Plaintiffs Susquehanna
Securities, LLC and Susquehanna Investment
Group*

SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave
New York, NY 10017
(212) 455-2000

*Attorneys for Plaintiff-Intervenor Citadel
Securities LLC*

August 11, 2026

4924-5973-7531.10

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

ADDITIONAL FACTS ................................................................................................... 2

    A.    Procedural History As to the Preliminary Injunction ............................................ 2

    B.    The Narrowed Defendants and Accounts ............................................................. 4

ARGUMENT .................................................................................................................. 14

I.    A PRELIMINARY INJUNCTION IS WARRANTED IN THIS ACTION ..................... 14

    A.    Plaintiffs Will Be Irreparably Harmed Absent a Preliminary Injunction .............. 15

    B.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims ........................... 16

        1.    Plaintiffs Are Likely to Succeed on Their Claim Pursuant to Section 20A of the Exchange Act ............................................................... 18

        2.    Plaintiffs Are Likely to Succeed on the Unjust Enrichment Claim ........... 19

        3.    The Balance of Hardships Weighs in Favor of Plaintiffs ......................... 21

    C.    The Public Interest Weighs in Favor of a Preliminary Injunction ......................... 22

II.    ALTERNATIVELY, AN ORDER OF ATTACHMENT SHOULD BE ENTERED ................................................................................................................ 23

CONCLUSION ................................................................................................................ 24

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT ........................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021)................................................................18

*Citigroup Glob. Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)................................................................21

*Dodona I, LLC v. Goldman, Sachs & Co.*,
    847 F. Supp. 2d 624 (S.D.N.Y. 2012)................................................................20

*Dong v. Miller*,
    No. 16 Civ. 5836, 2018 WL 1445573 (E.D.N.Y. Mar. 23, 2018) ...........................................15

*In re Feit & Drexler, Inc.*,
    760 F.2d 406 (2d Cir. 1985)................................................................15

*Gilead Scis., Inc. v. Pain Relief RX, Inc.*,
    No. 26 Civ. 2172 (CBA) (CHK), 2026 WL 1471775 (E.D.N.Y. May 26, 2026)....................14

*Google LLC v. Does 1-25*,
    No. 1:25 Civ. 09421-LAK, 2025 WL 3451343 (S.D.N.Y. Dec. 1, 2025)...............................15

*Gruber v. Gilbertson*,
    No. 16 Civ. 9727, 2019 WL 4458956 (S.D.N.Y. Sep. 17, 2019) ...........................................19

*Gulf & W. Indus., Inc. v. Great Atl. & Pac. Tea Co.*,
    476 F.2d 687 (2d Cir. 1973)................................................................22

*Hossain v. Mediastar Ltd.*,
    No. 24 Civ. 1201 (KPF), 2025 WL 2578128 (S.D.N.Y. Sept. 5, 2025)................................15

*Myun-Uk Choi v. Tower Rsch Cap. LLC*,
    890 F.3d 60 (2d Cir. 2018)................................................................19, 20

*Newbro v. Freed*,
    409 F. Supp. 2d 386 (S.D.N.Y. 2006), *aff'd*, No. 06 Civ. 1722, 2007 WL
    642941 (2d Cir. Feb. 27, 2007)................................................................20

*Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of VA.*,
    144 F. Supp. 2d 241 (S.D.N.Y. 2001)................................................................16, 21

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015)................................................................14, 16

4924-5973-7531.10

**Page(s)**

*SEC v. One or More Purchasers of Call Options for the Common Stock of CNS,
Inc.*, 2006 WL 3004875 (E.D. Pa. Oct. 20, 2006) ; Order Granting Preliminary
Injunction ........................................................................................................................16

*SEC v. One or More Purchasers of Call Options for the Common Stock of CNS,
Inc.*, No. 06 Civ. 04540 (E.D. Pa. Oct. 30, 2006) ....................................................16

*SEC v. One or More Unknown Purchasers of Options of Intermune, Inc.*,
No. 10 Civ. 09560 (S.D.N.Y. Jan. 7, 2011) .............................................................14, 17

*SEC v. One or More Unknown Purchasers of Sec. of Telvent GIT, SA*,
No. 11 Civ. 3794 (S.D.N.Y. July 13, 2011) .................................................................17

*SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*,
No. 07 Civ. 00431 (D.D.C. Mar. 23, 2007) .................................................................14

*SEC v. One or More Unknown Traders in the Sec. of Anadarko Petroleum Corp.*,
No. 19 Civ. 03785 (S.D.N.Y. May 20, 2019) ..............................................................17

*SEC v. One or More Unknown Traders in Sec. of Bioverativ, Inc.*,
2018 WL 2244465 (S.D.N.Y. Feb. 9, 2018) ...........................................................16, 17

*SEC v. One or More Unknown Traders in Sec. of Gen. Commc'n, Inc.*,
No. 17 Civ. 02659 (S.D.N.Y. Apr. 24, 2017) ..............................................................14

*T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*,
No. 10 Civ. 2843 JG ARL, 2010 WL 4038826 (E.D.N.Y. Oct. 14, 2010) .............................20

*TAGC Mgmt., LLC v. Lehman*,
842 F. Supp. 2d 575 (S.D.N.Y. 2012) .......................................................................23

*Tecspec LLC v. Donnolo*,
No. 25 Civ. 1676, 2026 WL 1361842 (2d Cir. May 15, 2026) .................................15

*Tradescape.com v. Shivaram*,
77 F. Supp. 2d 408 (S.D.N.Y. 1999) .........................................................................21

*United States v. Kosinski*,
976 F.3d 135 (2d Cir. 2020) .....................................................................................22

**Statutes and Rules**

CPLR § 6201 ..............................................................................................................23, 24

CPLR § 6212 ...................................................................................................................23

Fed. R. Civ. P. 64 .....................................................................................................1, 23, 24

Fed. R. Civ. P. 65 ..............................................................................................................1

4924-5973-7531.10

Plaintiffs Susquehanna Securities, LLC and Susquehanna Investment Group ("Susquehanna") and Plaintiff-Intervenor Citadel Securities LLC ("Citadel Securities," and together with Susquehanna, "Plaintiffs") respectfully submit this joint, omnibus reply memorandum of law in further support of their application for preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65 or, in the alternative, attachment pursuant to Federal Rule of Civil Procedure 64.[1]

## PRELIMINARY STATEMENT

This Court previously issued a temporary restraining order (the "TRO") freezing certain brokerage accounts based on aggregated trading data indicating that then-unidentified defendants made over $100 million in insider trading profits using those accounts.  This brief refers to the broader group of unidentified traders covered by the original TRO as the John Doe Defendants.  Now, based on the expedited discovery authorized by this Court, Plaintiffs have uncovered the identities of many of the John Doe Defendants and the details of their individual trading.  Those details confirm that certain individuals traded in a manner that makes clear their unlawful use of material non-public information ("MNPI") concerning the Crackdown News,[2] as they bought perfectly timed put options in FUTU and TIGR stock that resulted in outsized profits at Plaintiffs' expense.

As a result, Plaintiffs now seek a preliminary injunction targeting the assets of a narrowed subset of the John Doe Defendants (the "Narrowed Defendants"), including specific amounts within 47 different brokerage accounts used by the Narrowed Defendants (the

---

[1] *See* Memorandum of Law in Support of Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction or Attachment in the Alternative and Ex Parte Motion for Expedited Discovery (ECF 5, the "Susquehanna Br.") and supporting declarations (ECF 6-8); Citadel Securities' Joinder in Plaintiffs' Request for a Preliminary Injunction (ECF 41).

[2] This reply brief uses the same defined terms as Susquehanna's opening brief and related submissions (ECF 5-8).

"Narrowed Accounts").  Plaintiffs have determined that all John Doe Defendants other than the Narrowed Defendants can be released from the current TRO, as Plaintiffs do not intend to seek further relief against them, including a preliminary injunction, at this time.  Plaintiffs served the holders of each of the Narrowed Accounts with the Court's Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction, entered on June 29, 2026 (ECF 10, the "Order"), and the papers on which it was granted.  The Narrowed Defendants are on notice of the Order and there is no active opposition to the entry of the requested preliminary injunction as against the Narrowed Defendants.

## ADDITIONAL FACTS

### A.  Procedural History As to the Preliminary Injunction

On June 29, 2026, the Court entered the Order which, among other things, temporarily restrained the John Doe Defendants' assets in the accounts they used to place the Subject Trades, ordered that Susquehanna could conduct expedited non-party discovery to uncover the identities of the John Doe Defendants, required Susquehanna to post $100,000 in security, set a date for a preliminary injunction hearing, and permitted service of the order on the Brokers (and the John Doe Defendants via the Brokers) by email and FedEx (ECF 10).

Susquehanna immediately posted the required security and served the Brokers with the Order and the non-party subpoenas seeking identifying information as to the John Doe Defendants (ECF 11).

On July 2, 2026, Citadel Securities filed an Order to Show Cause seeking leave to intervene in this action and a proposed intervenor complaint (ECF 21-1, "Citadel Securities Compl."), which the Court granted on July 10, 2026 (ECF 40).  Citadel Securities thereafter joined in the pending motion for a preliminary injunction (ECF 41).

2

4924-5973-7531.10

On July 9, 2026, this Court issued an order requiring, *inter alia*, the parties to file an update as to service of the Order on the John Doe Defendants (ECF 34). On July 10, 2026, Susquehanna filed a letter informing the Court that the subpoenas on the Brokers had a return date of July 13, 2026, at which time Plaintiffs expected to learn the identities of the John Doe Defendants and would individually serve them with the Order, and sought an extension of the TRO (ECF 36). The Court granted this extension until July 24, 2026 (ECF 40).

The Brokers provided responses to Susquehanna's non-party subpoenas, including the names, emails, and addresses of many of the account holders at each Broker that engaged in the Subject Trades.[3] Plaintiffs immediately served all such John Doe Defendants by email and by FedEx, as permitted by the Order. On July 23, 2026, Plaintiffs filed a joint letter updating the Court on their efforts to identify and serve the approximately 300 account holders identified by the Brokers (ECF 54), and thereafter filed, under seal, certificates of service certifying that service had been made on all such account holders (ECF 55, 62).[4] Plaintiffs further informed the Court that Plaintiffs had been contacted by various individual account holders and were evaluating information from such account holders on a case-by-case basis to determine whether to voluntarily consent to lifting the TRO with respect to particular John Doe Defendants (ECF 54).

---

[3] Account holder information for certain accounts was not provided to Plaintiffs on the ground that information was not maintained in the United States. Additionally, as discussed in greater detail below, some of the accounts are "omnibus" accounts, *i.e.*, accounts used by other brokers to place trades for those other brokers' own clients, whose identities may not be revealed to the Brokers.

[4] John Doe 22 was identified to Plaintiffs by Futu for the first time on August 10, 2026. Plaintiffs served John Doe 22 by FedEx on August 11, 2026, and have asked Futu for email contact information. With respect to John Does 30 and 32, Interactive Brokers provided Susquehanna with email addresses but not a physical address for service, and email service was effected on July 20, 2026. Further service by email as to John Doe 30 was effected on August 4, 2026 to an alternate email address, after we received a bounceback notice from our prior email. Because no addresses were provided by Interactive Brokers as to John Does 30 and 32, Susquehanna reviewed public information to determine likely physical addresses applicable to each. The FedEx to John Doe 32 is pending, the FedEx to John Doe 30 was rejected.

On July 23, 2026, the Court entered an order extending the TRO until August 14, 2026, setting a deadline of July 30, 2026 for John Doe Defendants to oppose Plaintiffs' application for a preliminary injunction, and a deadline of August 6 for Plaintiffs' reply (ECF 57). The Court subsequently extended the response deadline for certain John Doe Defendants to August 6 and the Plaintiffs' reply deadline to August 11 (ECF 87).

On August 6, 2026, Plaintiffs submitted a preliminary set of lists of accounts at each of the Brokers that Plaintiffs had initially determined as of that date they were no longer seeking to restrain under the TRO based on a review of the trading data provided by the Brokers and certain John Doe Defendants. (ECF 89).

Several John Doe Defendants have appeared in this action, and none currently oppose entry of the requested preliminary injunction as to the Narrowed Defendants.[5] Plaintiffs entered into stipulated agreements as to the scope of the temporary restraining order and preliminary injunction as to two such Narrowed Defendants: Yang Jingyao (ECF 97) and New Frontier Investment Management Limited (ECF 98). With respect to five additional John Doe Defendants who appeared, Plaintiffs are not pursuing a preliminary injunction as to their proceeds from the Subject Trades and consent to lifting the TRO as to those individuals. *See* ECF 64 (Hui Nam B Tang); 65 (Weixian Wang); 78 (Dincer Ozcan); 82 (Chen Ji); 86 (Qian Wang); and 94 (Xiaohong Liang).

## B.  The Narrowed Defendants and Accounts

The expedited discovery authorized by this Court has allowed Plaintiffs to uncover the identities of most of the aggregated John Doe Defendants and the details of their

---

[5] Plaintiffs are in active discussions with John Doe 1 to resolve this matter as to the three Narrowed Accounts that it controls. Accordingly, the parties have agreed to a freeze of those accounts as to the proceeds identified in Exhibit D. If the parties' discussions are unsuccessful, Plaintiffs have agreed they will not oppose John Doe 1's right to seek relief from any preliminary injunction as to John Doe 1.

4924-5973-7531.10

individual participation in the Subject Trades.  Based on that information, Plaintiffs identified 47 accounts responsible for Subject Trades yielding approximately $155 million in illicit profits (the "Narrowed Accounts," which belong to the 45 Narrowed Defendants).  Declaration of Nathanael Wickman, dated August 11, 2026 (the "Wickman Decl."). ███████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████[6]

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

---

[6] Plaintiffs have reached stipulated agreements with two of these Narrowed Defendants about the scope of a preliminary injunction as to their accounts, and as a result those two Narrowed Defendants do not oppose entry of the requested preliminary injunction.

4924-5973-7531.10



Wickman Decl. ¶ 5.  Plaintiffs have submitted along with this brief lists of the Narrowed

Accounts separated by Broker.  *Id.* Exs. A-C.  The requested amounts are the estimated profits

from purchases of short-dated (*i.e.*, less than 30 days) FUTU and TIGR put options purchased

between midnight on May 7, 2026, and approximately 4:33 am Eastern Daylight Time (when the

Crackdown News was published) on May 22, 2026.  Wickman Decl. ¶ 5.

Each of the Narrowed Defendants engaged in a pattern of trading leading up to

the Crackdown News that can plausibly be explained only by their possession of inside

information.  Each of the Narrowed Defendants purchased highly risky, short-dated FUTU

and/or TIGR put options shortly before the Crackdown News on May 22, 2026, with the

aggregate quantity of those purchases far outstripping historical market-wide buying in those

options over the preceding six months.  Susquehanna Br. at 5.  Those specific types of trades

were precisely calibrated to take advantage of a substantial drop in the price of the underlying

stock on a near-immediate timeline, and when that occurred, the trades paid off handsomely.  *Id.*

at 4.  In sum, the timing, size, type, and pattern of trading for each of these traders is inconsistent

with any legitimate trading rationale based on public information.

Plaintiffs have conducted an individualized analysis of each Narrowed Defendant's trading and have attached as Exhibit D to the Wickman Declaration an analysis of the trading of each Narrowed Defendant, with each page corresponding to a different Narrowed Defendant.  Exhibit D details each of the particular Narrowed Defendant's profit, return percentage, broker, and location; and a chart illustrating that Narrowed Defendant's purchases of short-dated FUTU and/or TIGR put options between May 7 and the early morning of May 22. *Id.* at Ex. D.

**John Doe 1**



7

8



8

9



4924-5973-7531.10

10



4924-5973-7531.10



11

4924-5973-7531.10

12



12

13



███████████████████████████ No public information released during the relevant window offers any innocent explanation for the Subject Trades. ECF 1 ¶ 26. Neither Futu Holdings Ltd. ("Futu") nor UP Fintech Holding Ltd. ("UP") released financial results during that period; Futu's quarterly earnings announcement followed the Crackdown News on May 28, and UP's followed on June 2. *Id.*

## ARGUMENT

### I.

### A PRELIMINARY INJUNCTION IS WARRANTED IN THIS ACTION

Plaintiffs have established the requisite elements for a preliminary injunction: "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quotations and citations omitted); *see also* Susquehanna Br. at 11-20.

While Plaintiffs have met their burden for the reasons described herein, Plaintiffs' request for a preliminary injunction is also notably unopposed. Courts consistently issue preliminary injunctions where no defendant appears to object to such injunction. *See, e.g.,* Order Granting Preliminary Injunction at 4-5, *SEC v. One or More Unknown Traders in Sec. of Gen. Commc'n, Inc.*, No. 17 Civ. 02659 (S.D.N.Y. Apr. 24, 2017), ECF 21 (granting preliminary injunction where there was no opposition); Order Granting Preliminary Injunction at 1, 3-4, *SEC v. One or More Unknown Purchasers of Options of Intermune, Inc.*, No. 10 Civ. 09560 (S.D.N.Y. Jan. 7, 2011), ECF 4 (same); Order Granting Plaintiff's Unopposed Motion for Preliminary Injunction at 2-4, *SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*, No. 07 Civ. 00431 (D.D.C. Mar. 23, 2007), ECF 28 (same); *Gilead Scis., Inc. v.*

*Pain Relief RX, Inc.*, No. 26 Civ. 2172 (CBA) (CHK), 2026 WL 1471775, at *2 (E.D.N.Y. May 26, 2026) (granting preliminary injunction and freezing assets where defendants did not oppose temporary restraining order or preliminary injunction); *Google LLC v. Does 1-25*, No. 1:25 Civ. 09421-LAK, 2025 WL 3451343, at *4-6 (S.D.N.Y. Dec. 1, 2025) (granting preliminary injunction against John Doe defendants that did not appear or oppose the injunction).

### A.    Plaintiffs Will Be Irreparably Harmed Absent a Preliminary Injunction

Plaintiffs have demonstrated that "absent a preliminary injunction they will suffer an injury that is . . . actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Tecspec LLC v. Donnolo*, No. 25 Civ. 1676, 2026 WL 1361842, at *4 (2d Cir. May 15, 2026). A preliminary injunction freezing a defendant's assets is appropriate where "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Dong v. Miller*, No. 16 Civ. 5836, 2018 WL 1445573, at *10 (E.D.N.Y. Mar. 23, 2018) (quotation and citation omitted). A preliminary injunction in the form of an asset freeze is particularly justified where, as here, there is a significant risk that proceeds from illicit trading will be transferred to foreign markets and become unreachable. *See* Susquehanna Br. at 11-13.

Indeed, the case is even stronger now that Plaintiffs have identified many of the John Doe Defendants and confirmed that ████ of those identified appear to be non-domiciliaries (with ████ residing in China or Hong Kong) and would be easily able to remove proceeds remaining in the United States to foreign accounts, potentially frustrating any attempt to recover the damages. *See, e.g.*, *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) ("[F]ederal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction." (citation and quotations omitted)); *Hossain v. Mediastar Ltd.*, No. 24 Civ. 1201

15

(KPF), 2025 WL 2578128, at *6 (S.D.N.Y. Sept. 5, 2025) (granting preliminary injunction restricting asset transfers where defendants had "mov[ed] digital assets from the U.S." and noting that "absent injunctive relief, Plaintiffs could very well end up with a substantial judgment and no means to enforce it"); *SEC v. One or More Purchasers of Call Options for the Common Stock of CNS, Inc.*, 2006 WL 3004875, at *1 (E.D. Pa. Oct. 20, 2006) (extending temporary restraining order upon finding that "the balance of the harms favor[ed] the SEC" because they would be "unable to secure appropriate relief in enforcement proceedings if the assets have already been moved beyond the jurisdiction of the United States courts"); Order Granting Preliminary Injunction at 2, *SEC v. One or More Purchasers of Call Options for the Common Stock of CNS, Inc.*, No. 06 Civ. 04540 (E.D. Pa. Oct. 30, 2006), ECF 13 (same, granting preliminary injunction); *SEC v. One or More Unknown Traders in Sec. of Bioverativ, Inc.*, 2018 WL 2244465, at *1-2 (S.D.N.Y. Feb. 9, 2018) (granting preliminary injunction to freeze assets where plaintiffs alleged that defendants, trading through Swiss accounts, purchased call options the week a company's acquisition was announced, expiring shortly after the announcement).

## B.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims

Plaintiffs have demonstrated they are likely to succeed on the merits of their claims for (1) breach of Section 20A of the Exchange Act and (2) unjust enrichment, or, at minimum, have raised "sufficiently serious questions going to the merits of [the] claims to make them fair ground for litigation." *Actavis*, 787 F.3d at 650 (citation omitted); *see also* Susquehanna Br. at 13-18.

While this case is in its nascent stage, "there are unquestionably sufficiently serious questions to litigate" in light of the Narrowed Accounts' pattern of unprecedented, highly risky, and incredibly profitable trading in short-dated FUTU and TIGR put options in the days

16

4924-5973-7531.10

leading up to the Crackdown News, which can only plausibly be explained by the possession of inside information. *Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of VA.*, 144 F. Supp. 2d 241, 248-49 (S.D.N.Y. 2001) (granting preliminary injunction while making "no finding with respect to plaintiff's likelihood of success on the merits" because there were "sufficiently serious questions" regarding contested facts).

Courts routinely grant preliminary injunctions to preserve assets in insider trading cases when presented with similar highly suspicious trading patterns that lack any plausible, alternative legitimate explanation. *See, e.g.*, Order Imposing Preliminary Injunction, Freezing Assets, and Granting Other Relief at 2-3, *SEC v. One or More Unknown Purchasers of Sec. of Telvent GIT, SA*, No. 11 Civ. 3794 (S.D.N.Y. July 13, 2011), ECF 11 (granting preliminary injunction and freezing assets where defendants purchased hundreds of call options days before a company's acquisition announcement, and exercised them two days after the announcement, reaping outsized profits on the rise in stock price); Order Granting Preliminary Injunction at 3-4, *Intermune*, No. 10 Civ. 09560 (S.D.N.Y. Jan. 7, 2011), ECF 4 (granting preliminary injunction based on suspicious pattern of call options purchases made just weeks before announcement of regulatory approval of company's product); *SEC v. One or More Unknown Traders in Sec. of Bioverativ, Inc.*, 2018 WL 2244465, at *1-2 (S.D.N.Y. Feb. 9, 2018) (granting preliminary injunction based on suspicious pattern of call option purchases over a one-week period shortly before an acquisition announcement); Order Granting Preliminary Injunction, Extending Asset Freeze and Other Relief at 2-4, *SEC v. One or More Unknown Traders in the Sec. of Anadarko Petroleum Corp.*, No. 19 Civ. 03785 (S.D.N.Y. May 20, 2019), ECF 13 (granting asset freeze where plaintiffs alleged that defendants made suspicious pattern of call option purchases).

17

**1.  Plaintiffs Are Likely to Succeed on Their Claim Pursuant to Section 20A of the Exchange Act**

Plaintiffs have shown they are likely to succeed on both requirements of a Section 20A claim: (1) "a predicate insider trading violation of the Exchange Act" showing "unlawful trading in securities based on material non-public information"; and "(2) alleg[ing] sufficient facts showing that the defendant traded the security at issue contemporaneously with the plaintiff." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 175-76 (S.D.N.Y. 2021) (citations omitted); *see also* Susquehanna Br. at 13-17.

The additional facts that Plaintiffs have learned through expedited discovery have significantly strengthened the likelihood that Plaintiffs will succeed on their Section 20A claim, as they demonstrate that a relatively small group of accounts was responsible for the vast majority of the Subject Trades.  As detailed above, an individualized analysis of each of the Narrowed Defendants' trading reveals certain broad categories among them: some of the Narrowed Defendants increased their position over time as the Crackdown News approached, while others focused their trading on particular days.  And for those Narrowed Defendants who focused on particular days, those days differed, indicating that different Narrowed Defendants may have obtained inside information about the imminent Crackdown News at different times, which is not uncommon in large or dispersed tipping chains.  *See, e.g.*, Press Release, U.S. Sec. & Exch. Comm'n, SEC Charges Technology Company Insider in California With Tipping Confidential Information Exploited by Hedge Funds (Apr. 23, 2014), https://www.sec.gov/newsroom/press-releases/2014-82 (describing large "chain of tipping and illegal trading among a network of hedge fund traders.").

But in every case, the Narrowed Defendants each purchased large numbers of highly speculative short-dated put options that eclipsed historical market-wide activity in those

4924-5973-7531.10

options, and the trades were perfectly timed to result in extraordinary gains that materialized in a matter of days or weeks.

Plaintiffs also meet the second factor—contemporaneous trading—because Plaintiffs sold short-dated FUTU and TIGR put options on each day that the Subject Trades occurred. Indeed, Plaintiffs were the direct counterparties on a significant portion of the Subject Trades (ECF 6 ¶ 14). That exceeds what is required to succeed on this element, which is merely that a plaintiff traded "within a reasonable time period, usually limited to a few days" within the relevant defendant's trades. *Gruber v. Gilbertson*, No. 16 Civ. 9727, 2019 WL 4458956, at *2 (S.D.N.Y. Sep. 17, 2019) (citation omitted); *see also* Susquehanna Br. at 17.

## 2.    Plaintiffs Are Likely to Succeed on the Unjust Enrichment Claim

Plaintiffs have also shown a likelihood of success on all elements of their unjust enrichment claim: "(1) that the defendant[s] benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Rsch Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted); *see also* Susquehanna Br. at 17-18.

*First*, the Narrowed Defendants were each enriched by at least hundreds of thousands of dollars from participating in the Subject Trades, and some by tens of millions more. *See supra* at pp. 4-6.

*Second*, the Narrowed Defendants' enrichment was at Plaintiffs' expense. Plaintiffs were each registered market makers on relevant options exchanges, with obligations to purchase and sell FUTU and TIGR put options to market participants such as the Narrowed Defendants to ensure sufficient liquidity in those markets. Plaintiffs, acting in their roles as market makers, had no knowledge of the impending Crackdown News. Accordingly, the Narrowed Defendants fraudulently purchased put options from Plaintiffs at prices that did not factor in the Narrowed Defendants' insider knowledge. After the price of FUTU and TIGR stock

19

dropped substantially following the Crackdown News, the Narrowed Defendants' put options became hugely profitable, giving the Narrowed Defendants ill-gotten gains of approximately $155 million in the aggregate, with a substantial portion of those gains (approximately $75m) coming directly from transactions with Plaintiffs. The relationship between Plaintiffs' losses and Defendants' gains is therefore sufficiently connected and direct. *See Choi*, 890 F.3d at 69 (transactions with high-frequency trading firm had sufficient connection for unjust enrichment claim to proceed due to high certainty that plaintiffs traded with defendants); *see also Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 653 (S.D.N.Y. 2012) (plaintiff stated a claim for unjust enrichment despite intermediate party in transaction); *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10 Civ. 2843 JG ARL, 2010 WL 4038826, at *5 (E.D.N.Y. Oct. 14, 2010) (holding defendant's gain was "straightforward and proximate" despite presence of an intermediary).

*Third*, equity and good conscience require the return of the illicit profits made on the Subject Trades. Courts assess this factor considering "the totality of the circumstances" with a focus on "whether the benefit remained with the defendant, and whether defendant's conduct was 'tortious or fraudulent.'" *Newbro v. Freed*, 409 F. Supp. 2d 386, 400 (S.D.N.Y. 2006) (citation omitted), *aff'd*, No. 06 Civ. 1722, 2007 WL 642941 (2d Cir. Feb. 27, 2007). Here, Defendants retained the profits they obtained through illegal insider trading, an activity which is not only fraudulent and a breach of federal securities law, but is also in violation of Chinese trading laws and relevant company insider trading policies. *See* Susquehanna Br. at 18. Permitting the Narrowed Defendants to retain approximately $155 million in illegally obtained profits would reward unlawful insider trading, penalize market makers who supplied liquidity in

20

good faith, and undermine confidence in the integrity of the U.S. securities markets.  *See* Susquehanna Br. at 9; Citadel Securities Compl. at ¶ 13.

> **3.**     **The Balance of Hardships Weighs in Favor of Plaintiffs**

Plaintiffs have further shown they are entitled to a preliminary injunction because "the costs outweigh the benefits of not granting the injunction," even absent a finding of likelihood of success on the merits.  *Citigroup Glob. Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010); *see also* Susquehanna Br. at 18-19.

Plaintiffs have demonstrated they would "suffer most grievously if the preliminary injunction motion were wrongly decided"—namely because the Narrowed Defendants are likely to empty their accounts and abscond with the ill-gotten gains earned on the Subject Trades.  *See Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999). What is more, the Narrowed Defendants will not suffer, let alone suffer "grievously" from the entry of a preliminary injunction as to their illegal proceeds because that relief will simply preserve the assets at issue and allow the Narrowed Defendants to otherwise conduct business using their brokerage accounts.  *See Quantum Corp. Funding, Ltd.* 144 F. Supp. 2d at 249 (granting preliminary injunction where scope of injunction would permit plaintiff to "be paid in the future should it prevail, but it would *not* shut down [defendant's] corporations" which possessed "receivables substantially in excess of the amount this Court will freeze").

Some of the Narrowed Accounts are subaccounts within omnibus accounts at TradeUP and Interactive Brokers used by other brokers (the "Omnibus Brokers"), *i.e.*, accounts that Omnibus Brokers use to place trades on behalf of the Omnibus Brokers' own clients.  For such accounts, Plaintiffs have been informed that the Brokers generally do not know the identities or contact information for the subaccount holders (who are not direct clients of the Brokers), though the Brokers' records contain subaccount numbers for each trade made in the

21

omnibus account (and accordingly, the Brokers have records of trading activity in each subaccount). Plaintiffs understand that the cash balance carried in an omnibus account is held on a pooled, aggregate basis that is computed on a net basis, rather than as individually segregated, per-trade or per-person deposits, and that the Brokers custody and margin each omnibus account as though it were the account of a single customer—the Omnibus Broker.

For the avoidance of doubt, to the extent subaccounts cannot be individually frozen by the Brokers, Plaintiffs request the preliminary injunction apply to the relevant omnibus accounts as to the relevant proceed amounts. The requested preliminary injunction will preserve the relevant subaccount asset amounts in the omnibus accounts in the United States, without freezing the omnibus accounts in their entirety. Because the omnibus account holders are all overseas—while TradeUP and Interactive Brokers are based in the United States—freezing subaccount customers' overseas accounts with the Omnibus Brokers on an expedited basis is not legally practicable. Plaintiffs' only recourse is to seek the freeze as to the omnibus account funds held with TradeUP and Interactive Brokers in the United States.[7]

C.    **The Public Interest Weighs in Favor of a Preliminary Injunction**

Plaintiffs have established that the public interest weighs strongly in favor of granting this preliminary injunction to enforce this nation's securities laws and foster investor confidence in the integrity of the U.S. securities markets. *See, e.g.*, *United States v. Kosinski*, 976 F.3d 135, 144 (2d Cir. 2020); *see also* Susquehanna Br. at 19. The integrity of the U.S. securities markets is sufficiently implicated regardless of whether the plaintiff is a governmental

---

[7] TradeUP objects to freezing assets in the omnibus accounts, but recently informed Plaintiffs that it has inquired with the relevant Omnibus Brokers whether they are willing to freeze their own customer accounts with the subaccount identifiers that are Narrowed Accounts (specifically, those set forth in Exhibit C #1-4, 6-12). The parties are meeting and conferring on this issue and will seek relief from this Court if they are not able to come to an agreement as to the scope of the TRO and preliminary injunction.

4924-5973-7531.10

entity or a private plaintiff. *See, e.g.*, *Gulf & W. Indus., Inc. v. Great Atl. & Pac. Tea Co.*, 476 F.2d 687, 699 (2d Cir. 1973) (affirming preliminary injunction in private action where securities law violations implicated a "clear, pervasive and vital" public interest and private enforcement served as a "necessary supplement" to government action).

## II.
## ALTERNATIVELY, AN ORDER OF ATTACHMENT SHOULD BE ENTERED

In the alternative, Plaintiffs have established their entitlement to an order of attachment pursuant to Federal Rule of Civil Procedure 64 and New York CPLR § 6212—specifically, that "[i] it is probable that the plaintiff will succeed on the merits [ii] that one or more grounds for attachment provided in section 6201 exist, and [iii] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." CPLR § 6212(a); *see* Susquehanna Br. at 21-23. Plaintiffs are likely to succeed on the merits for the reasons stated herein (*see supra* at pp. 16-20); the ground for attachment pursuant to CPLR § 6201(1)—that a "defendant is a nondomiciliary residing without the state"—is met as all Narrowed Defendants are non-domiciliaries residing outside of New York (and largely outside of the United States); and the Narrowed Defendants have not asserted any counterclaims.

In addition to considering the statutory grounds, in assessing whether to grant an attachment, "a reviewing court must determine whether the defendant has assets within the State that could satisfy a judgment and whether petitioner's fear that the judgment will not be satisfied is reasonable." *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 586 (S.D.N.Y. 2012) (citation omitted). As set forth herein, ████ of Narrowed Defendants are non-domiciliaries who mostly reside in Hong Kong or China, and Plaintiffs are not aware of any assets belonging to the Narrowed Defendants within the state other than those currently restrained by the Order. And the Narrowed Defendants' illegal trading, as set forth herein and as alleged in the

23

4924-5973-7531.10

Complaint, provides ample basis for a reasonable concern that, absent a freeze on the Narrowed

Accounts, the Narrowed Defendants would likely transfer their ill-gotten gains outside this

Court's jurisdiction and render any judgment uncollectible.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court (i)

grant Plaintiffs preliminary injunctive relief enjoining the Narrowed Defendants from

transferring, encumbering, removing, or otherwise conveying proceeds held in accounts with the

third-party Brokers that were obtained through the Narrowed Defendants' illegal insider trading

activities pending the outcome of this suit, or, (ii) in the alternative, enter an order of attachment

pursuant to Federal Rule of Civil Procedure 64 and CPLR §§ 6201, 6212 with respect to these

same proceeds.

Dated:   New York, New York
         August 11, 2026

**FRIEDMAN KAPLAN SEILER
ADELMAN & ROBBINS LLP**

By:   _/s/ John N. Orsini_
John N. Orsini (jorsini@fklaw.com)
Jared Lenow (jlenow@fklaw.com)
Carolyn Young (cyoung@fklaw.com)
Bo Garfinkel (bgarfinkel@fklaw.com)
7 Times Square
New York, NY 10036
(212) 833-1100

*Attorneys for Plaintiffs
Susquehanna Securities, LLC, and
Susquehanna Investment Group*

**SIMPSON THACHER & BARTLETT LLP**

By:   _/s/ Jonathan K. Youngwood_
Jonathan K. Youngwood (jyoungwood@stblaw.com)
Michael J. Osnato (michael.osnato@stblaw.com)
Anthony C. Piccirillo
(anthony.piccirillo@stblaw.com)
425 Lexington Ave
New York, NY 10017
(212) 455-2000

*Attorneys for Plaintiff-Intervenor Citadel
Securities LLC*

24

4924-5973-7531.10

25

# <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMIT</u>

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and this Court's order expanding Plaintiffs' word count for this document (ECF 87), I certify that the foregoing document complies with the word-count limit, in that it contains 6319 words, excluding the caption, table of contents, table of authorities, and signature block.  In making this calculation, I have relied on the word count of the word processing system used to prepare the document.


Dated:   New York, New York
         August 11, 2026


                                        <u>/s/ John N. Orsini</u>
                                        John N. Orsini

4924-5973-7531.10