UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSQUEHANNA SECURITIES, LLC and SUSQUEHANNA INVESTMENT GROUP,<br>Plaintiffs,<br>-against-<br>JOHN DOES 1 THROUGH 100,<br>Defendants. | 26-cv-5474 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

On June 29, 2026, plaintiffs (collectively, "Susquehanna") filed suit against 100 defendants, bringing a claim under Section 20A of the Securities Exchange Act of 1934 and a claim for unjust enrichment.[1] Susquehanna charged those defendants with trading on material non-public information—that on May 22, 2026, there would be an announcement that the "Chinese government [was] crack[ing] [down] on cross-border trading platforms," causing a crash of certain securities. Dkt. 1 at 1. Before the Court is Susquehanna's motion for a preliminary injunction, seeking to restrain a narrowed set of 40 defendants from "transferring, encumbering, removing, or otherwise conveying proceeds held in accounts with third-party broker firms . . . that were obtained through" alleged "inside trading activities." Dkt. 5 at 1; *see* Dkt 165 at 4. In the alternative, it seeks an order of attachment. Dkt. 5 at 21.

For the following reasons, that motion is DENIED.

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy" that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *State Farm Mut. Auto. Ins. Co.* v. *Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024) (quoting *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005)). To succeed on its motion for a preliminary injunction, Susquehanna must establish "(1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [its] favor, (2) that [it is] likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in [its] favor, and (4) that the public interest would not be disserved by the issuance of a preliminary injunction." *Mendez v. Banks*, 65 F.4th 56, 63–64 (2d Cir. 2023) (citation modified).

[1] Plaintiffs are joined by intervenor Citadel Securities LLC.

Similarly, an order of attachment is "an extraordinary process, often causing great damages, and is designed, ordinarily, for the purpose of being used sparingly only." *Winklevoss Cap. Fund, LLC v. Shrem*, 360 F. Supp. 3d 251, 256 (S.D.N.Y. 2019) (quoting *A. C. Israel Commodity Co. v. Banco Do Brasil, S.A.*, 270 N.Y.S.2d 283, 286 (N.Y. Sup. Ct. 1966)); *see Ne. United Corp. v. Lewis*, 26 N.Y.S.3d 810, 812 (3d Dep't 2016) (noting that "[a]ttachment is a drastic remedy"). In support of such relief, a movant must show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." New York Civil Practice Law and Rules ("NY CPLR") § 6212(a).

## DISCUSSION

### I. Susquehanna fails to demonstrate that a preliminary injunction is warranted

Defendants, citing *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), argue that the Court lacks authority to grant Susquehanna's requested relief. This Court need not resolve that issue at this juncture. Assuming without deciding that the Court has the authority to issue the relief sought, Susquehanna has failed to demonstrate that a preliminary injunction is warranted as to either of its claims.

#### A. Susquehanna fails to demonstrate that it is likely to suffer irreparable injury

First off, Susquehanna seems to argue, at least implicitly, that the absence of a response from a number of defendants, many of whom have yet to be properly served pursuant to Federal Rule of Civil Procedure 4, somehow reduces the burden that Susquehanna needs to satisfy. It doesn't. Susquehanna, not the defendants, bears the burden of proving it is entitled to relief. *See State Farm*, 120 F.4th at 79; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). With that in mind, the Court begins with "the single most important prerequisite" for the issuance of a preliminary injunction: that Susquehanna demonstrate it is likely to suffer irreparable harm absent interim relief. *Gov't Emps. Ins. Co. v. Patel*, 166 F.4th 280, 291 (2d Cir. 2026) (quoting *State Farm*, 120 F.4th at 80).

"Monetary loss alone will generally not amount to irreparable harm." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 934 F.2d 30, 34 (2d Cir. 1991). Nonetheless, Susquehanna argues that an injunction should lie here because "there is a significant risk that [d]efendants will dissipate, conceal, or remove from the jurisdiction of the Court the proceeds of their insider trades." Dkt. 5 at 12; *see Ger-Nis Int'l, LLC v. FJB, Inc.*, 2007 WL 656851, at *2 (S.D.N.Y. Mar. 1, 2007) ("[T]he irreparable harm in this case . . . is the risk that defendant will have dissipated [the funds at issue] without paying the plaintiff, leaving the plaintiff out of luck and out of money." (citation modified)). Susquehanna's evidence, however, does not establish such a risk.

First, Susquehanna claims that imposing a preliminary injunction on *all defendants* is warranted (regardless of where they reside or whether they have appeared in this case) because their trading activity is suspect. Dkt. 136 at 4. In other words, because it is likely to show that defendants have engaged in illegal insider trading (more on that below), there is "a significant risk that the

proceeds from the illicit trading will be removed . . . and ultimately be unavailable for any eventual award." *Id.* This train of reasoning collapses two of the preliminary injunction prongs and would result in injunctions being given as a matter of course in most cases alleging insider trading, or even more broadly, in most cases alleging fraudulent conduct. There is no support for such a broad proposition. The cases upon which Susquehanna relies—*SEC v. Gonzalez de Castilla*, 145 F. Supp. 2d 402 (S.D.N.Y. 2001), and *SEC v. McGinnis*, 2013 WL 6500268 (D. Conn. Dec. 11, 2013)—don't support Susquehanna's argument. The courts in both cases were clear that there was no need to establish irreparable harm because the actions were initiated by the SEC. *See Gonzalez de Castilla*, 145 F. Supp. 2d at 414 n.10 ("[T]he SEC . . . need not make the typical showing of a likelihood of irreparable injury . . . ."); *McGinnis*, 2013 WL 6500268, at *3 (same); *see also SEC v. Unifund SAL*, 910 F.2d 1028, 1036 (2d Cir. 1990) (noting that the SEC is "relieved . . . of the obligation, imposed on private litigants, to show risk of irreparable injury"). Susquehanna's sweeping argument thus fails.

Susquehanna next splits the defendants into three groups and highlights the various characteristics of each that it contends show a risk that "assets will be transferred beyond the reach of the [C]ourt's jurisdiction." Dkt. 136 at 4. These groups are defendants (1) who reside domestically ("domestic defendants"), (2) who reside abroad and have appeared in the case ("foreign appearing defendants"), and (3) who reside abroad but have yet to appear ("foreign non-appearing defendants").

Start with the domestic defendants. To show that it is likely to suffer irreparable harm, Susquehanna repeats its likelihood-of-success-based arguments and adds one more reason: The domestic defendants have yet to appear. Dkt. 136 at 5–6. But Susquehanna offers no explanation for why the domestic defendants' absence means they are likely attempting to "frustrat[e] the [C]ourt's ability to enforce a judgment." *Id.* at 5. Susquehanna's cases don't support this proposition. For example, while the court in *A & J Produce Corp. v. JD Produce Maspeth LLC* did note that the defendants had "failed to appear," it primarily relied on evidence that defendants had written bounced checks and "acknowledged" that they "lack[ed] sufficient cash" in concluding that the assets in question "ha[d] been dissipated or [were] immediately threatened with dissipation." 2025 WL 1384820, *at 2 (S.D.N.Y. Apr. 28, 2025). Susquehanna has offered nothing similar to demonstrate that the domestic defendants (who apparently have not been formally served yet) are likely to "dissipate or conceal the proceeds of their trading absent injunctive relief." Dkt. 136 at 6.

Susquehanna then claims that it should be able to secure relief against at least the foreign defendants (both appearing and non-appearing) because there is a risk that their assets will be "moved beyond the jurisdiction of United States courts." Dkt. 136 at 5. Moving money overseas might give Susquehanna a headache in enforcing a judgment. But that does not mean that Susquehanna will be "out of luck," Dkt. 5 at 12 (citing *Ger-Nis Int'l, LLC*, 2007 WL 656851, at *2), such as if a foreign government would not recognize an order from this Court. *See Fluor Daniel Arg., Inc. v. ANZ Bank*, 13 F. Supp. 2d 562, 565 (S.D.N.Y. 1998) ("[W]hile the need to resort to the legal processes of Argentina might well complicate such enforcement efforts, these complexities do not

rise to the extraordinary level sufficient to warrant a finding of irreparable harm in such circumstances." (citation omitted)); *GP Asset Holdings, LLC v. RossLaw, PLLC*, 2024 WL 103295, at *4 (S.D. Cal. Jan. 9, 2024) ("The Court declines to conclude that the mere fact that [parties] are foreign entities, and that it may theoretically be difficult to enforce a judgment, are reasons alone to find that Plaintiff is likely to face irreparable harm." (citation modified)). Moreover, the existence of an undefined risk is not the same as being "*likely* to suffer irreparable injury." *Mendez*, 65 F.4th at 63 (emphasis added) (quoting *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010)); *see Firemen's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1146, 1157 (S.D.N.Y. 1990) ("The fact that plaintiff may, in the interim, be marginally less secure with respect to the availability of a final money judgment, does not constitute 'irreparable harm' . . . ."). And the Court declines to find that defendants are "likely" to abscond with funds simply because they reside abroad. *See Spin Master v. Aciper*, 2020 WL 6482878, at *5 (S.D.N.Y. Nov. 4, 2020) ("Plaintiffs provide no legal authority for their argument that the harsh remedy of an asset freeze would be justified by the mere fact that a corporation is Chinese and uses a cross-border payment processing service.").

Unlike other cases where plaintiffs have established irreparable harm, Susquehanna does not point to any duplicitous endeavor or pattern of evasive conduct regarding the foreign defendants' funds. *See Hossain v. Mediastar Ltd.*, 2025 WL 2578128, at *6 (S.D.N.Y. Sept. 5, 2025) (finding irreparable harm where defendants had "mov[ed] digital assets" abroad "during the pendency of the lawsuit" and "present[ed] shifting, inconsistent, and unsworn explanations to the Court regarding their assets"); *Gilead Scis., Inc. v. Safe Chain Sols., LLC*, 684 F. Supp. 3d 51, at *68 (E.D.N.Y. 2023) (finding that plaintiff "met its burden to show that" the defendant "engaged in a pattern of fraudulent or evasive conduct"); *Dong v. Miller*, 2018 WL 1445573, at *10 (E.D.N.Y. Mar. 23, 2018) (recounting the unrebutted allegations that defendants had "previously violated a TRO and been held liable for fraudulent conveyance to avoid paying a judgment"). This argument is particularly strained as to the appearing defendants, some of whom have put in evidence that they have sufficient funds to satisfy any potential judgment. *See* Dkt. 140 ¶ 5; Dkt. 147 ¶ 33. They, for all intents and purposes, seem ready to play ball.

Susquehanna does have one last argument concerning the foreign non-appearing defendants. Susquehanna argues that their residence abroad, their alleged insider trading, and their failure to appear in this case, when coupled together, evince a likelihood of irreparable injury. But three unpersuasive arguments do not add up to a winning one. Indeed, it appears that Susquehanna knows who each of the defendants are and has not provided the Court with any argument that it will be unable to enforce a potential judgment against them. *See Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 707 (S.D. Tex. 2002) ("In the cases in which such a prejudgment asset-freezing injunction is granted, the courts have been presented with allegations and evidence showing that the defendants were concealing assets, were transferring them so as to place them out of the reach of postjudgment collection, or were dissipating the assets.").

The closest Susquehanna gets to establishing irreparable harm is in its reply where it states (without supporting evidence) that one of the defendants, referred to as John Doe 3, "appears to have already removed over $10 million from the relevant account prior to the implementation of

the freeze." Dkt. 165 at 10. But even that is not necessarily evidence that this defendant is attempting to frustrate a judgment. After all, if these funds are being used for active trading purposes, it would make sense that the defendant would reinvest their liquid assets elsewhere, which might not even be theirs to begin with (but instead belong to a fund under management, an employer, or a client, etc.).

In all, Susquehanna's arguments boil down to the assertion that there is a chance that the funds it is suing for might be dissipated. This, however, is not a "clear showing," *State Farm*, 120 F.4th at 79, that it is "likely to suffer irreparable injury" absent an injunction, *Mendez*, 65 F.4th at 63 (quoting *Salinger*, 607 F.3d at 79). A showing of irreparable injury requires more than mere speculation. *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) ("To satisfy the irreparable harm requirement, Plaintiffs must demonstrate . . . they will suffer an injury that is neither remote nor speculative, but actual and imminent . . . ." (citation modified)).

**B. Susquehanna fails to demonstrate a likelihood of success on the merits**

In addition to its failure to make a clear showing of irreparable harm, Susquehanna lacks sufficient evidence of success on the merits to support the extraordinary relief it seeks.

As an initial matter, Susquehanna argues that it doesn't have to show "a likelihood of success on the merits" because it can meet the "serious questions" alternative. *See Real Est. Bd. of N.Y., Inc. v. City of New York*, 182 F.4th 140, 163 (2d Cir. 2026). But under that alternative, a party must also be able to demonstrate that the "balance of hardships tip[s] decidedly in [its] favor." *Mendez*, 65 F.4th at 63 (quoting *Salinger*, 607 F.3d at 79). Here, Susquehanna has failed to show it will suffer irreparable harm, while defendants are likely to suffer considerable hardship should an injunction prevent them from using their funds. *See State Farm*, 120 F.4th at 84–85 (explaining that the balance of hardships "factor is 'related' to the irreparable harm requirement . . . ." (quoting *Salinger*, 607 F.3d at 84)); Dkt. 143 ¶ 34 (one defendant explaining that "[t]he market continues to move even while the accounts are restrained. If the value of an investment declines, I may be unable to take timely action to reduce or avoid the loss").

On this point, the Court observes that one defendant (against whom Susquehanna no longer seeks a preliminary injunction) highlighted in their opposition briefing that Susquehanna is a sophisticated "market maker." Dkt. 139 at 4–5; *see also* Dkt. 150 at 12. As such, it is likely that it "hedge[d] [its] positions . . . to avoid some of the risk inherent in market making." *C.R.A. Realty Corp. v. Tri-S. Invs.*, 738 F.2d 73, 77 (2d Cir. 1984). Susquehanna, for its part, does not dispute that it "engaged in hedging." Dkt. 165 at 14–15 n.10. Rather, it argues that the possibility that the Court might later "reduce any losses by gains earned from hedging" isn't relevant at the preliminary injunction stage. *Id.* at 15 n.10. But without knowing what plaintiffs' losses are (if there are any), it is difficult to determine the balance of hardships and why it would weigh in favor of the market-maker plaintiffs here.

Susquehanna, therefore, must establish "a likelihood of success on the merits" rather than just "sufficiently serious questions going to the merits." *Mendez*, 65 F.4th at 63 (quoting *Salinger*, 607

F.3d at 79). It has not done so. To prevail on its Section 20A claim, *see* Dkt. 1 at 21–22, Susquehanna must prove that a "person who owes a fiduciary duty of trust and confidence . . . us[ed] material non-public information to profit by trading on or 'tipping' the confidential information to others." *In re Archegos 20A Litig.*, 156 F.4th 108, 116, 121 (2d Cir. 2025). To show that it is likely to succeed on this claim, Susquehanna submitted charts chronicling each defendant's trading activity. *See* Dkt. 103-4. Susquehanna contends that the data reflects that defendants took out "highly risky short-dated put options" that expired either the day or week after the news about the Chinese-government crackdown was released to the public on May 22, 2026. Dkt. 5 at 14–15. According to Susquehanna, "there is no . . . plausible explanation" for defendants' trading patterns except that defendants were acting on material non-public information from a tipper receiving a personal benefit (or were the fiduciary themselves). *Id.* But one appearing defendant, Zhengfei Li,[2] has explained why this narrative isn't the best explanation of the trading data at issue. Dkt. 142.

The chart detailing Li's trades shows that he took out two equally-sized positions, half of which expired after May 22, and half of which expired *beforehand*. Dkt. 103-4 at 14. This, Li asserts, "is consistent with repeated speculation based on market signals and inconsistent with precise knowledge of a May 22 announcement." Dkt. 142 at 14. Moreover, in Li's declaration, he states that he noticed "unusually heavy put-option activity" based on "public market information" and "public investor discussions" that led him to purchase put-options of his own. Dkt. 143 ¶¶ 14–22. Looking at the exhibits Li submitted, it's plausible that defendants simply noticed volatility in the market (perhaps caused by insider trading by others, perhaps not) and decided to act on the same. *See* Dkt. 143-2 (indicating that on May 21, 2026, the day Li put in his put-options that expired after May 22, the market reflected trading activity at a put/call ratio of ~49:1). Another defendant claims that she purchased a series of put-options leading up to May 22 for this very reason, Dkt. 147 ¶¶ 9–10, and submitted screenshots of her texts expressing astonishment when the news of the Chinese-government crackdown was released, *see* Dkt. 147 ¶ 16–19; Dkt. 147-3. It could also be that defendants saw "publicly available posts" that "major negative news" would soon be coming and that "[f]ollowing the crowd . . . [was] practically a sure thing," Dkt. 143-3 at 7, 18, and decided to take the risk and bet on those posts being correct. In either scenario, the information, by virtue of it being publicly accessible, would obviously not be "non-public." *In re Archegos*, 156 F.4th at 116.

Of course, not all the defendants' trading data looks like Li's. *See, e.g.*, Dkt. 103-4 at 4. But Susquehanna elected to litigate the case the way it did—by joining all the defendants in a single suit and filing omnibus briefs that present arguments without real individualized treatment. And the Court is not in the practice of "sift[ing] through" the papers "to determine if some nugget is buried somewhere in that mountain." *Tyson v. Town of Ramapo*, 2023 WL 3044623, at *1 (S.D.N.Y. Apr. 21, 2023) (quoting *Emanuel v. Gap, Inc.*, 2022 WL 3084317, at *5 (S.D.N.Y. Aug. 3, 2022)). Moreover, even if some of the data is highly suspicious, Susquehanna's arguments still

[2] Li is joined by defendant Flying Height Trading Co., Ltd. ("Flying Height"), in opposing Susquehanna's motion. Dkt. 142. Li is "the sole and 100% owner" of Flying Height. Dkt. 143 ¶ 4.

do not preclude the possibility that the defendants were simply following the market, as Li claims he was doing. This is modern trading—where algorithms, AI agents, and career traders are all jockeying, minute by minute, for the newest hot trade, using analyst information, market trends, news reports, scuttlebutt from online forums, and other tea leaves to make split-second decisions. True, insider trading could be one explanation, but there needs to be more to support locking up millions of dollars in funds for the duration of a lawsuit. That's especially true when Susquehanna originally charged *100 defendants* with having received insider information, a tactic that it has subsequently recognized was too broad. Susquehanna no longer seeks to impose a preliminary injunction against over half those originally sued. That fact, by itself, makes it hard to credit the charts as making the required "clear showing." *State Farm*, 120 F.4th at 79.

This is to say nothing of the fact that Susquehanna has not identified the supposed "tipper," the fiduciary duty the tipper owes, or the benefit the tipper received from tipping the information to others. *See In re Archegos*, 156 F.4th at 120–21 ("Without particular factual allegations regarding the tips, it is an entirely conjectural leap to disregard Archegos's flurry of trading activity and instead to attribute the movement in the Issuers' stocks to improper unidentified trading by [Appellees'] unidentified tippees."). True, the Second Circuit has before upheld an asset freeze in an insider trading case, despite the plaintiff having "not identified the person or entity alleged to have conveyed inside information." *See Unifund*, 910 F.2d at 1029, 1040–42. But in that case, not only was the timing of the trades in question unusual, but there was evidence presented that the specific defendants being sued were not acting in conformity with their usual practices. *Id.* at 1031 (noting that "no other options had been traded" in the account used by one defendant for months and that the other defendant did not hedge its holdings, which was unlike its "prior equity positions"). The district court whose decision was being reviewed, moreover, "declined to credit [one of the defendant's] innocent explanation for its" trades. *Id.* at 1032. And even then, the Second Circuit still found that "[t]he Commission . . . presented a thin case for *any* ancillary relief." *Id.* at 1042. Therefore, it does not follow from this decision that Susquehanna, which was originally suing 100 defendants, has similarly shown that an alleged insider has likely tipped off all 100 (or even any) of the defendant-investors. If anything, the sheer number of alleged violators, whom Susquehanna does not connect to one another, appears to suggest that it was something *other* than insider trading that caused them to act as they did.

For these reasons, Susquehanna has failed to establish "a likelihood of success on the merits" on its Section 20A claim. *Mendez*, 65 F.4th at 63 (quoting *Salinger*, 607 F.3d at 79). And the same logic applies to Susquehanna's unjust-enrichment claim. According to the complaint, this claim is premised on defendants having allegedly engaged in "illegal insider trading." Dkt. 1 at 22. Even accepting Susquehanna's contention that this claim "does not necessarily rely on establishing the elements" of its Section 20A claim, Dkt. 136 at 11, it is still premised on defendants having "trad[ed] . . . on the basis of material information that was *not known to the market as a whole*." Dkt. 136 at 12 (emphasis added). But as discussed above, Susquehanna has not made a clear showing that this was the case. And given plaintiffs' status as market-makers who admittedly engaged

in hedging, it isn't clear the extent to which any illicit gains by the defendants were "at the plaintiffs' expense," one of the elements of an unjust enrichment claim. *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018).

***

None of this is to say that Susquehanna has failed to meet its burden to plead plausible claims for relief. The Court hasn't addressed that issue yet. But plausibility isn't the standard for a broad injunction seeking to freeze funds totaling just under a hundred million dollars. Susquehanna has failed to show a likelihood of success on the merits.

## II. Susquehanna fails to demonstrate that that attachment is appropriate

In the alternative to a preliminary injunction, Susquehanna seeks "an order of attachment." Dkt. 5 at 22. This remedy derives from Federal Rule of Civil Procedure 64(a), which provides that a court may order the seizure of "property to secure satisfaction of [a] potential judgment" to the extent the "remedy is available . . . under the law of the state where the court is located." As Susquehanna notes, the applicable state law is NY CPLR § 6212. Pursuant to that law, an order of attachment is only appropriate if a movant shows, among other things, "that it is probable that the plaintiff will succeed on the merits" of their claims. *Id.* § 6212(a). Susquehanna has not done so.

In arguing that this requirement is met, Susquehanna relies on its showing on the merits in the preliminary-injunction context. Dkt. 5 at 22 ("For the reasons already stated herein, Susquehanna has shown likely success on the merits in this action."). But as explained above, the Court does not agree that Susquehanna has shown a likelihood of success as to either of its two claims. Susquehanna has therefore not shown that "it is probable that [it] will succeed on the merits." NY CPLR § 6212; *see GKER Ltd. v. Clarkson BU LLC*, 227 N.Y.S.3d 62, 65 (1st Dep't 2025) ("Plaintiff did not demonstrate a likelihood of success on the merits. Therefore, the order of attachment should be reversed . . . .").

Moreover, even if Susquehanna "satisfies all of the statutory requirements for an order of attachment, the issuance of relief remains in the discretion of the Court, because attachment is recognized to be a harsh and extraordinary remedy." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004). And here, the Court would not exercise its discretion to attach the funds in question. Susquehanna is primarily trying to attach property as a means "to provide security for a potential judgment against . . . nonresident[s]." *Hotel 71 Mezz Lender LLC v. Falor*, 926 N.E.2d 1202, 1207 (N.Y. 2010). But given the Court's determination that Susquehanna has not demonstrated that it will suffer irreparable harm, the Court does not find attachment to be an appropriate remedy. *See VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 967 N.Y.S.2d 338, 347 (1st Dep't 2013) (holding that attachment of Chinese entities' funds was an abuse of discretion where "[t]he sellers ha[d] shown no evidence that the buyers lack[ed] sufficient assets, or that they [would] choose to hide or otherwise dispose of their assets").

## CONCLUSION

For the foregoing reasons, Susquehanna's motion for a preliminary injunction, or in the alternative, an order of attachment, is DENIED. The order at Dkt. 10 will be dissolved as of 5 pm ET on September 16, 2026.

SO ORDERED.

Dated: September 14, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge